# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| YVONNE MART FOX, GRANT NESHEIM, DANIELLE DUCKLEY, and SHELLEY KITSIS, individually and on behalf of all others similarly situated, | **Case No.: 3:18-cv-00327-JDP** |
| *Plaintiffs,* | |
| *v.* | |
| IOWA HEALTH SYSTEM, doing business as UNITYPOINT HEALTH, an Iowa non-profit corporation, | |
| *Defendant.* | |

<u>**SETTLEMENT AGREEMENT**</u>

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

This Settlement Agreement, dated June 25, 2020, is made and entered into by and among: (1) Plaintiffs Yvonne Mart Fox, Grant Nesheim, Danielle Duckley, and Shelley Kitsis ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the proposed Settlement Class; and (2) Iowa Health System, doing business as UnityPoint Health ("UnityPoint") (collectively, the "Parties").

## I.  BACKGROUND

1.     This litigation arises from two security incidents involving the personally identifiable information ("PII") and/or protected health information ("PHI") of UnityPoint's patients and employees, which are described as the First Data Breach and the Second Data Breach in the Plaintiffs' Second Amended Class Action Complaint (ECF No. 22).

2.     In the First Data Breach, Plaintiffs allege that, starting as early as November 1, 2017, cyber-criminals accessed and obtained the PII/PHI of UnityPoint's patients and employees through one or more UnityPoint employee email accounts. Plaintiffs allege that UnityPoint did not discover this unauthorized access until at least February 7, 2018, and did not notify its patients and employees until on or about April 16, 2018. The PII/PHI of approximately 16,429 UnityPoint patients and employees was potentially impacted in the First Data Breach.

3.     In the Second Data Breach, Plaintiffs also allege that cyber-criminals accessed and obtained the PII/PHI of UnityPoint's patients and employees through one or more UnityPoint employee email accounts, starting as early as March 14, 2018. Plaintiffs allege UnityPoint did not discover this subsequent unauthorized access until on or about May 31, 2018, and did not notify its patients and employees until on or about July 30, 2018. The PII/PHI of approximately 1.4 million UnityPoint patients and employees was potentially impacted in the Second Data Breach.

Collectively, the First Data Breach and the Second Data Breach are defined as the "Security Incidents."

4.     After UnityPoint provided notice of the First Data Breach in mid-April 2018, Plaintiff Fox retained counsel and filed this class action lawsuit on May 4, 2018. (ECF No. 1). On July 30, 2018, Plaintiff Fox and Plaintiff Nesheim filed the First Amended Class Action Complaint. (ECF No. 17).

5.     After UnityPoint provided notice of the Second Data Breach, Plaintiffs Fox, Nesheim, Duckley, and Kitsis filed the Second Amended Class Action Complaint on August 13, 2018, which encompasses the two Security Incidents. (ECF No. 22).

6.     Plaintiffs' Complaint asserted the following causes of action against UnityPoint: (1) negligence; (2)   negligence per se; (3) violation of Wisconsin's Confidentiality of Patient Health Care Records statute; Wis. Stat. § 146.81, *et seq.*; (4) violation of the Wisconsin data breach notification statute, Wis. Stat. § 134.98; (5) violation of the Illinois data breach notification statute, 815 Ill. Comp. Stat. Ann. 530/10, *et. seq.*; (6) violation of the Iowa data breach notification statute, Iowa Code Ann. § 715C, *et seq.*; (7) invasion of privacy; (8) misrepresentation; (9) breach of contract; (10) breach of the implied covenant of good faith and fair dealing; (11) violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; (12) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. 510/2, *et seq.*; (13) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2, *et seq.*; (14) violation of the Iowa Private Right of Action for Consumer Frauds act, Iowa Code Ann. § 714H, *et seq.*; (15) unjust enrichment; and (16) declaratory relief.

7.     UnityPoint moved to dismiss Plaintiffs' Complaint on September 17, 2018.  ECF No. 27. On July 25, 2019, the Court granted in part and denied in part UnityPoint's Motion to

Dismiss. ECF No. 55. The Court denied UnityPoint's standing challenge and upheld Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of Wisconsin's Confidentiality of Patient Health Care Records statute. With respect to Plaintiffs' claims for negligence and negligence per se, the Court upheld the claims of Plaintiffs Fox and Nesheim under Wisconsin law, but dismissed the claims of Plaintiffs Duckley and Kitsis under the laws of Illinois and Iowa, respectively. The Court also dismissed the remaining 10 of Plaintiffs' original 16 claims.

8. UnityPoint filed its answer to Plaintiffs' Complaint on August 15, 2019, denying that Plaintiffs were entitled to any relief. ECF No. 58.

9. The Parties engaged in substantial discovery, including collectively producing over 620,000 pages of documents.

10. On March 3, 2020, the Parties participated in a full-day mediation with the Honorable Judge Morton Denlow (Ret.) of JAMS in Chicago, Illinois.

11. The Parties were unable to reach a resolution at the mediation, but continued to engage in settlement negotiations.

12. The Parties participated in two additional telephonic mediation sessions with Judge Denlow on March 18, 2020 and March 20, 2020.

13. At the conclusion of the March 20, 2020 mediation session, Judge Denlow provided a mediator's proposal on an unresolved term, which the Parties accepted on March 23, 2020.

14. The Parties finalized and executed a Term Sheet on April 10, 2020, which represented an agreement in principle on all material terms of the Settlement.

15. After coming to an agreement in principle, the Parties finalized the terms of this Settlement Agreement and the attached exhibits.

16. The Class Representatives and Class Counsel believe the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the putative class.

**NOW, THEREFORE**, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among the Class Representatives, individually and on behalf of the Settlement Class, and UnityPoint that, subject to the approval of the Court, the Litigation be forever resolved, settled, compromised, and dismissed with prejudice on the following terms and conditions:

## II. DEFINITIONS

17. The terms used in this Settlement Agreement, and listed in this section, shall have the following meanings:

    a. "Action" means *Fox, et al. v. Iowa Health System, d/b/a UnityPoint Health*, Case No. 18-CV-327-JDP (W.D. Wis.).

    b. "Agreement" or "Settlement Agreement" or "Settlement" means this Settlement Agreement, Exhibits, and the settlement embodied herein.

    c. "Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

    d. "Claimant" means a Settlement Class Member who makes a Claim for benefits under this Settlement Agreement.

    e. "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc. or other third-party settlement administrator chosen by the Parties to provide Notice of the Settlement to the Settlement Class and administer the Settlement, subject to approval of the Court.

f. "Claims Deadline" means the final time and date by which a Claim must be postmarked or submitted to the Settlement Website in order for a Class Member to be entitled to any of the settlement consideration contemplated by this Agreement. The Claims Deadline shall be one hundred and twenty (120) days after the Notice Date.

g. "Class Counsel" means Cari Campen Laufenberg, of Keller Rohrback L.L.P.; Ronald A. Marron, of the Law Offices of Ronald A. Marron, APLC; and Robert L. Teel, Of Counsel to the Law Offices of Ronald A. Marron, APLC.

h. "Class Representatives" means the Plaintiffs (as defined later in this section).

i. "Complaint" means the Second Amended Complaint filed on August 13, 2018. (ECF No. 22).

j. "Court" means the United States District Court for the Western District of Wisconsin.

k. "Effective Date of Settlement" or "Effective Date" means the date upon which the Settlement in the Action shall become effective and final, and occurs when each and all of the following conditions have occurred:

    i. This Settlement Agreement has been fully executed by all Parties and their counsel;

    ii. Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement, and approving the forms of Notice described in Section VI, below;

    iii. The notice program has been executed in accordance with the Preliminary Approval Order;

iv. The Court has entered a Final Order and Judgment finally approving the Settlement; and

v. The Final Judgment, as defined in Paragraph 17-m, below, has been entered and all times to appeal therefrom have expired with (1) no appeal or other review proceeding having been commenced; or (2) an appeal or other review proceeding having been commenced, and such appeal or other review having been concluded such that it is no longer subject to review by any court, whether by appeal, petitions for rehearing or reargument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been resolved in a manner that affirms the Final Judgment in all material respects.

l. "Fees and Expenses" means the reasonable attorneys' fees and costs incurred by counsel for Plaintiffs and awarded by the Court, not to exceed $1,575,000.00 (One Million Five Hundred and Seventy-Five Thousand Dollars).

m. "Final Judgment" means a judgment entered by the Court, as discussed in Section XIII, below.

n. "Initial Credit Offering" means the credit monitoring offered by UnityPoint in 2018 to a subset of Persons potentially affected by the Security Incidents.[1]

o. "Litigation" means all claims and causes of action asserted, including those asserted in the Action, or that could have been asserted, against UnityPoint and the Released Parties, including any and all appellate rights, as well as any other such

---

[1] Unless otherwise noted, all capitalized terms are defined herein.

actions by and on behalf of any other individuals or putative classes of individuals originating, or that may originate, in the jurisdictions of the United States against UnityPoint relating to the Security Incidents.

p.  "Notice" means the double-sided postcard "Notice of Pendency and Proposed Settlement of Class Action," substantially in the form, included within Exhibit B, attached hereto, which is to be mailed to Settlement Class Members, subject to approval by the Court.

q.  "Notice Date" means the first date upon which the Notice is disseminated.

r.  "Opt-Out Date" means the date by which Settlement Class members must submit their request to be excluded from the Settlement Class in order for that request to be effective.

s.  "Parties" means (i) Class Representatives, on behalf of themselves and the Settlement Class; and (ii) UnityPoint.

t.  "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents and/or assignees.

u.  "Plaintiffs" mean Yvonne Mart Fox, Grant Nesheim, Danielle Duckley, and Shelley Kitsis.

v.  "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing mailed notice to the Settlement Class of the pendency of the Action and of the Settlement, to be entered by the Court.

w. "Released Claims" means any and all claims and causes of action of every nature and description (including Unknown Claims), whether arising under federal, state, statutory, regulatory, common, foreign, or other law, that arise in any way from or relate to the Litigation against UnityPoint or the Security Incidents (other than claims to enforce the Settlement).

x. "Released Parties" means UnityPoint and all of its respective past, present, and future parent companies, partnerships, subsidiaries, affiliates, divisions, employees, servants, members, providers, partners, principals, directors, shareholders, and owners, and all of their respective attorneys, heirs, executors, administrators, insurers, coinsurers, reinsurers, joint ventures, personal representatives, predecessors, successors, transferees, trustees, and assigns, and includes, without limitation, any Person related to any such entities who is, was, or could have been named as a defendant in the Litigation.

y. "Security Incidents" means the data security incidents described as the First Data Breach and the Second Data Breach in the Second Amended Class Action Complaint (ECF No. 22).

z. "Settlement Class" means all Persons to whom UnityPoint sent notification that their personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of the data security incidents described as the First Data Breach and the Second Data Breach in the Second Amended Class Action Complaint. (ECF No. 22).

aa. "UnityPoint" means Iowa Health System, doing business as UnityPoint Health.

bb. "UnityPoint's Counsel" means Baker & Hostetler LLP.

cc. "Unknown Claims" means any of the Released Claims that any Settlement Class members, including any of the Class Representatives, does not know or suspect to exist in his/her favor at the time of the release of the Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Class Representatives expressly shall have, and each of the other Settlement Class members shall be deemed to have, and by operation of the Final Judgment shall have, waived the provisions, right, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by the law of any state, province, or territory of the United States, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class members, including the Class Representatives, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Class Representatives expressly shall have, and each other Settlement Class member

shall be deemed to have, and by operation of the Final Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all of the Released Claims. The Parties acknowledge, and Settlement Class members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

### III.    SETTLEMENT BENEFITS TO CLASS

18.    **Ordinary Expense Reimbursement:** All Settlement Class members who submit a valid Claim are eligible to recover compensation for 100% of their ordinary out-of-pocket expenses, not to exceed $1,000.00 per Settlement Class member, that were incurred between February 7, 2018 and the Claims Deadline, as a result of the Security Incidents, including: (i) long distance telephone charges; (ii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incidents), and text messages (if charged by the message and incurred solely as a result of the Security Incidents); (iii) postage; (iv) documented costs associated with miscellaneous expenses such as notary, fax, postage, copying, and mileage; (v) documented costs associated with credit freezes; (vi) documented costs of credit monitoring services active between February 7, 2018 and one year after the Claims Deadline; and (vii) up to three (3) hours of lost time compensated at $15.00 per hour upon attestation that time was spent as a result of the Security Incidents.

a.    For a Claimant to recover documented costs of credit monitoring services active between February 7, 2018 and one year after the Claims Deadline incurred as a result of the Security Incidents, discussed in subpart (vi), above, the Claimant must submit either (1) a receipt showing a one year subscription to a credit monitoring

service between February 7, 2018 and one year after the Claims Deadline incurred as a result of the Security Incidents; or (2) at least three receipts showing consecutive monthly payments to a credit monitoring service between February 7, 2018 and one year after the Claims Deadline incurred as a result of the Security Incidents and an attestation that the Claimant intends to continue subscribing to such service through at least one year after the Claims Deadline. In the event that a Claimant has subscribed to a credit monitoring service on a monthly basis and has not yet made three consecutive monthly payments at the time the Claimant files a Claim, the Claimant will be advised of the opportunity to provide the requisite documentation in the Dispute Resolution Process, discussed in Section IX, below. These instructions shall be expressly listed in the Long Form notice posted on the settlement website, and listed in the FAQs posted on the settlement website. These instructions shall be referenced in the online or mailed claim form. If these instructions are not followed, the Settlement Administrator shall deem Claims invalid, subject to the Dispute Resolution Process.

b.  Settlement Class members seeking reimbursement under this Paragraph 18 must complete and submit either a written or online claim form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. The claim form must be verified by the Settlement Class member with an attestation that he or she believes that the losses or expenses claimed were incurred as a result of the Security Incidents. The claim form will require documentation of the ordinary out-of-pocket cost(s). Documentation will not be required for lost time.

19.     **Extraordinary Expense Reimbursement:** All Settlement Class members who submit a valid Claim are also eligible to recover compensation for 100% of their documented extraordinary monetary out-of-pocket losses and extraordinary compensable additional lost time incurred on or after February 7, 2018, as a result of the Security Incidents, in an amount not to exceed $6,000.00 per Settlement Class member. Extraordinary out-of-pocket expense reimbursements shall include, but are not limited to: (i) documented professional fees and other costs incurred to address identity fraud or theft, including but not limited to falsified tax returns, new account fraud, existing account fraud, account takeover, and medical-identity theft; (ii) other documented unreimbursed losses, fees, or charges incurred as a result of identity fraud or theft, including, but not limited to (a) unreimbursed bank fees, (b) unreimbursed card reissuance fees, (c) unreimbursed overdraft fees, (d) unreimbursed charges related to unavailability of funds, (e) unreimbursed late fees, (f) unreimbursed over-limit fees, (g) unreimbursed charges from banks or credit card companies, and (h) interest on payday loans due to card cancellation or due to over-limit situations; and (i) reimbursement for up to ten (10) additional hours of lost time (compensated at $15.00 per hour), not reimbursed as ordinary compensable lost time, spent resolving documented extraordinary losses.

a.   Settlement Class members seeking extraordinary expense reimbursement under this Paragraph 19 must complete and submit either a written or online claim form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline.

b.   To claim extraordinary out-of-pocket expense reimbursements, a Settlement Class member must: (i) provide identification of the identity theft event(s); (ii) attest that he or she believes that the losses or expenses were incurred as a result of the

Security Incidents, and (iii) provide reasonable documentation of the out-of-pocket losses claimed.

c. Claims for extraordinary compensable additional lost time will be provided to Settlement Class members subject to the following: (i) reimbursement for up to five (5) hours of extraordinary compensable additional lost time will require an attestation that the time was spent as a result of the documented identity theft or fraud; and (ii) reimbursement for more than five (5) hours will require a documented or written showing of how the time was expended and why it was reasonably necessary.

20.     **Credit Monitoring Protections:** UnityPoint agrees to offer one (1) year of credit monitoring for all Settlement Class members (the "Credit Monitoring Protections").  Settlement Class members may elect to defer the Credit Monitoring Protections by one (1) year. The credit monitoring will be provided through Identity Guard's Total Plan, powered by IBM Watson, and shall include at least the following, or similar, services:

a. Up to $1 million dollars reimbursement insurance from AIG covering losses due to identity theft and stolen funds;

b. Three bureau credit monitoring providing notice of certain changes to the enrolled Settlement Class member's credit profile;

c. Real time authentication alerts in as little as three seconds when someone attempts to make a change to enrolled Settlement Class members' personal account information within Identity Guard's network;

d.  Alerts based on searches of payday-loan providers and court records and monitoring of the top ten largest U.S. financial institutions, for attempted or actual fraudulent use of the enrolled Settlement Class members' information;

e.  Dark Web Monitoring that will provide notification if an enrolled Settlement Class member's information such as Social Security number, credit card numbers, financial account numbers, and health insurance number are found on the Dark Web;

f.  Threat Alerts powered by IBM "Watson's" artificial intelligence of potential threats relevant to the enrolled Settlement Class members found by IBM Watson's artificial intelligence, for instance: breaches, phishing scams, and malware vulnerabilities;

g.  Customer support and victim assistance provided by Identity Guard;

h.  Anti-phishing Applications for iOS & Android Mobile devices; and

i.  Safe browsing software for personal computers and Macs to help protect the enrolled Settlement Class member's computer(s) against malicious content with an add-on for Safari, Chrome, and Firefox web browsers that delivers proactive malware protection by blocking various malware delivery channels including phishing, malvertisements, and Flash (the extension also blocks content and tracking cookies to help protect personal information).

21.  **Exhaustion of Insurance Benefits:** As a condition precedent to being reimbursed for ordinary or extraordinary out-of-pocket expenses, under Paragraphs 18 and 19, above, Claimants must exhaust all reimbursement insurance benefits covering losses due to identity theft and stolen funds available to them in connection with both the Initial Credit Offering and the Credit

Monitoring Protections (the "Insurance"). Upon submission of a Claim by a Settlement Class member, the Claims Administrator shall determine whether the Insurance may provide coverage for some or all of the expenses claimed by the Settlement Class member. In the event the Claims Administrator determines that some or all of a Settlement Class member's Claim under the Settlement may be covered by the Insurance, the Claims Administrator and/or Identity Guard shall assist the Claimant in making a claim against the Insurance (the "Insurance Claim"). The Claims Administrator and/or Identity Guard shall be available to answer questions regarding the Insurance and the exhaustion requirements. While a Claimant's Insurance Claim is pending or in process, any portion of the Settlement Class member's Claim that may be covered by and reimbursed from the available Insurance will not be paid to the Claimant until the available Insurance completes processing the Insurance Claim; however, Claims for amounts that are not subject to the Insurance will be processed and shall be paid by the Claims Administrator pursuant to the terms of this Agreement. For those Claims which are covered by available Insurance, if the Insurance does not pay some or all of the claim(s) made by a Settlement Class member against the Insurance, the unpaid balance of any such Insurance Claim will be processed and the portion of such unpaid balance covered by Paragraphs 18 and 19, above, may be paid by the Claims Administrator pursuant to the terms of this Agreement.

22. **Court Approved Security Measures and Confirmatory Discovery:** UnityPoint has verified and Plaintiffs have or will confirm that the measures described in Exhibit A relating to UnityPoint's information security are presently in place and/or will be put in place.

   a. UnityPoint shall adopt, pay for, implement, and/or maintain the business practice commitments or substantially similar commitments related to information security to safeguard Settlement Class members' personally identifiable information as set

forth in Exhibit A, attached hereto. To the extent permitted by the Court, these Security Measure and Confirmatory Discovery terms and Exhibit A shall be filed under seal because they contain sensitive information about UnityPoint's cybersecurity practices that could harm UnityPoint and Settlement Class members, if made public.

b. UnityPoint has provided or shall provide confirmatory discovery sufficient to enable Plaintiffs to verify what business practice commitments UnityPoint has implemented or will implement to date as referenced in this Agreement.

c. UnityPoint shall maintain the business practice commitments, or substantially similar commitments, set forth in Exhibit A, for at least for two (2) years from the date the Court has entered a Final Order and Judgment finally approving the Settlement.

d. UnityPoint shall engage an independent third-party professional services firm to conduct an annual assessment, which will include review of UnityPoint's compliance with the business practice commitments set forth in Exhibit A.

e. After execution of the Settlement Agreement, UnityPoint agrees to provide Class Counsel a copy of its annual assessment described above for a period of two years.

f. Class Counsel shall have the opportunity to make one inquiry about each assessment produced, and UnityPoint will have thirty (30) days to respond to such inquiry. This information (including the assessments, Class Counsels' inquiries, UnityPoint's responses to such inquiries) will be treated as "Highly Confidential" under the Parties' Protective Order.

g. To the extent Class Counsel believes that UnityPoint is not complying with its business practice commitments set forth herein and in Exhibit A hereto, Class Counsel will first meet and confer with UnityPoint's Counsel to discuss the situation before seeking relief from the Court.

## IV. STIPULATED CLASS ACTION SETTLEMENT CERTIFICATION

23. Only for purposes of effectuating the Settlement, Class Representatives, Class Counsel, and UnityPoint agree and stipulate to certification of the Settlement Class as defined in this Agreement. Class Representatives, Class Counsel, and UnityPoint further agree and stipulate that, subject to Court approval, Class Counsel shall act as counsel for the Settlement Class.

24. Class Representatives, Class Counsel, and UnityPoint agree and stipulate that the Settlement should be approved by the Court, and that the Court should make a determination that the Settlement is fair, reasonable, and made in good faith. Class Counsel and UnityPoint shall bear the expenses and responsibility for taking all necessary measures to obtain Court approval, including, without limitation, preparing and filing all papers with the Court necessary for obtaining such approval, and following the required procedures for a good faith determination.

## V. RELEASE

25. Settlement Class members who do not opt-out of the Settlement in accordance with Court approved opt-out procedures and deadlines release any and all claims arising from or related to claims asserted in the Litigation, as more specifically set forth in Paragraphs 26 and 27, below.

26. The obligations incurred under this Settlement shall be in full and final disposition of the Litigation and of any and all Released Claims as against all Released Parties.

27. Upon the Effective Date, and without any further action, the Settlement Class members, including the Class Representatives, for good and valuable consideration the adequacy

of which is hereby acknowledged, shall fully, finally, and forever release, relinquish, and discharge any and all Released Claims against each and every one of the Released Parties, and shall forever be barred and enjoined, without the necessity of any of the Released Parties posting a bond, from commencing, instituting, prosecuting, or maintaining any of the Released Claims. Upon the Effective Date, and without any further action, Class Representatives further agree not to knowingly and voluntarily assist in any way any third party in commencing of prosecuting any suit against the Released Parties relating to any Released Claim.

## VI. ADMINISTRATION OF THE SETTLEMENT AND CLASS NOTICE

28.     The Claims Administrator shall provide notice to the Settlement Class members and administer the Settlement under the Parties' supervision and subject to the exclusive jurisdiction of the Court.

29.     Dissemination of the Notice shall be accomplished by the Claims Administrator and shall comply with the following:

      a.  *Class Member Information*: No later than fifteen (15) days after entry of the Preliminary Approval Order, UnityPoint shall provide the Claims Administrator with the name and physical address of each Settlement Class member (collectively, "Class Member Information") initially notified of the Security Incidents. UnityPoint warrants and represents that it will provide the most current Class Member Information for all Settlement Class members from the updated mailing list in connection with the incident responses related to the Security Incidents.

      b.  The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to

administer the Settlement as provided for in this Agreement, or to provide all data and information in its possession to the Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c. *Settlement Website*: Prior to the dissemination of the Notice, the Parties agree to direct the Claims Administrator to create a website dedicated to providing information related to the Action and this Settlement, including the Long Form notice contained within Exhibit C.  The website will include the information in the Notice, access to relevant publicly available court documents relating to the Action, and provide Settlement Class members with the ability to enroll in the Credit Monitoring Protections, make Claims for other Class benefits, and allow Settlement Class members to submit documents to supplement or cure deficient Claims.

d. *Settlement Toll Free Number*: The Claims Administrator shall establish and maintain a toll free telephone number with information relevant to this Settlement.

e. Within seven (7) days of receiving the Class Member Information, the Claims Administrator shall crosscheck the Class Member Information against the National Change of Address directory to ensure the most recent and accurate addresses are used to disseminate the Notice.  Upon receipt of any notice of address or forwarding address, the Claims Administrator shall re-mail any Notice so returned with a forwarding address.

f. Within thirty (30) days of receiving the Class Member Information, the Claims Administrator shall commence the dissemination of the Notice. Within five (5) days thereafter, dissemination of the Notice shall be completed.

g. Notice shall be given by U.S. mail to all Settlement Class members and postage will be prepaid by UnityPoint. Notice shall consist of a double-sided postcard that (1) notifies Settlement Class members of the Settlement and relevant terms; (2) provides them with the URL to the Settlement Website and a telephone number they can call to obtain additional information about the Settlement; and (3) instructs them on how to make a Claim.

h. Notice is subject to review and approval by the Parties as well as an expert specializing in providing notice to class members. Notice via U.S. mail shall be supplemented with the publication on UnityPoint's website to the extent practicable.

i. All Settlement Class members shall have one hundred and twenty days (120) after the Notice Date to make Claims for Class benefits.

30. The administration of the Settlement is defined as the approval of the form of notice program and all related forms; initial mailing of the Notice; creation and maintenance of Settlement Website; administration and coordination of the mailing and distribution of credit monitoring codes to be activated after final approval of Settlement; day-to-day administration of the Settlement, including responding to Settlement Class member inquiries; delivery to the Parties of any requests for opt-outs or objections; communication to the Parties about any issues that may arise; and the preparation of an Affidavit of Fairness of the Notice Program to be submitted to the Court with the Motion for Final Approval.

31. The notice program shall be designed to provide for maximum clarity and ease of Claim submission. Claims based on attestation may be made using a check-box on an online form, or mailed form if requested.

32.     The Claims Administrator shall inform Class Counsel and UnityPoint's Counsel regarding all material aspects of the claims process including Claims made, Claims accepted, Claims rejected, and all substantive communications with Settlement Class members.  Class Counsel may assist Settlement Class members with the claims process and intercede with the Claims Administrator on their behalf.

33.     Checks and credit monitoring codes for approved claims shall be mailed or emailed after the Effective Date and within thirty (30) days of the Effective Date and/or thirty (30) days of the date that the claim is approved, whichever is latest.

34.     Cashing a settlement check is a condition precedent to any Settlement Class member's right to receive Settlement benefits under Paragraphs 18 and 19.  All settlement checks shall be void one hundred and twenty (120) days after issuance and shall bear the language: "This check must be cashed within 120 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until two hundred and forty (240) days after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class member will have failed to meet a condition precedent to recovery of Settlement benefits under Paragraphs 18 and 19, the Settlement Class member's right to receive monetary relief shall be extinguished, and UnityPoint shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under Paragraphs 18 and 19 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than two hundred and forty (240) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

35.     All Settlement Class members who fail to timely submit a claim for any benefits hereunder within the time frames set forth within, or such other period as may be ordered by the

Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the Settlement set forth within, but will in all other respects be subject to, bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment.

36. No Person shall have any claims against the Claims Administrator, Class Representatives, Class Counsel, UnityPoint, and/or UnityPoint's Counsel based on distribution of benefits to Settlement Class members.

## VII. OPT-OUT PROCEDURES

37. Under the procedure set forth in the Notice, Settlement Class members have the right and ability to exclude themselves from the Settlement Class as set forth in the proposed preliminary approval order. In order to validly be excluded from the Settlement, the Settlement Class member must send a letter to the Claims Administrator no later than sixty (60) days after the Notice Date, stating he or she wants to be excluded from the Settlement in *Fox, et al. v. Iowa Health System, d/b/a UnityPoint Health*, Case No. 18-CV-327-JDP, in the United States District Court for the Western District of Wisconsin, and include his or her name, address, and signature. If the opt-out is untimely or otherwise fails to comply with any of the provisions for a valid opt-out, it shall not be considered a valid opt-out.

38. All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in Paragraph 37, above, shall be bound by the terms of this Settlement Agreement and Final Judgment entered thereon.

39.     The Claims Administrator shall cause copies of requests for exclusion from Settlement Class members to be provided to Class Counsel and UnityPoint's Counsel as they are received.  No later than ten (10) days after the Opt-Out Date, the Claims Administrator shall provide Class Counsel and UnityPoint's Counsel a complete and final list of all known Settlement Class members who have excluded themselves from the Settlement.  Class Counsel shall provide this information to the Court before the Final Fairness Hearing.

40.     In the event that within ten (10) days after the Opt-Out Date, there have been requests for exclusion totaling more than two hundred and fifty (250) individuals, UnityPoint may void this Settlement Agreement by notifying Class Counsel in writing.  If UnityPoint voids this Settlement Agreement under this paragraph, (a) the Parties shall be restored to their respective positions in the Action and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

## VIII.   OBJECTION PROCEDURES

41.     The Notice will inform the Settlement Class members that they may submit a written objection in this case, *Fox, et al. v. Iowa Health System, d/b/a UnityPoint Health*, Case No. 18-CV-327-JDP, in the United States District Court for the Western District of Wisconsin.  To be valid, an objection must state: (a) the objector's full name, address, telephone number, and e-mail address (if any); (b) information identifying the objector as a Settlement Class member; (c) a

written statement of all grounds for the objection, accompanied by any legal support the objector cares to submit; (d) the identity of all lawyers (if any) representing the objector; (e) the identity of all of the objector's lawyers (if any) who will appear at the Final Fairness Hearing; (f) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (g) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; and (h) the objector's signature or the signature of the objector's duly authorized lawyer or other duly authorized representative.

42.     In addition to the foregoing, objections should also provide the following information: (a) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three (3) years; (b) a list, by case name, court, and docket number, of all other cases in which the objector's lawyer (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years; and (c) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

43.     The Notice will further inform Settlement Class members that to be considered timely, any valid objection in the appropriate form must be **filed** with the Clerk of the United States District Court for the Western District of Wisconsin, United States District Court, 120 North Henry Street, Room 320, Madison, Wisconsin 53703, no later than sixty (60) days after the Notice Date. The Notice will also inform Settlement Class members that they must **mail** a copy of their objection to the following three different places, postmarked no later than sixty (60) days after the Notice Date:

| COURT | CLASS COUNSEL | UNITYPOINT'S COUNSEL |
|---|---|---|
| United States District Court for the Western District of Wisconsin United States District Court 120 North Henry Street Room 320 Madison, Wisconsin 53703 | Cari C. Laufenberg KELLER ROHRBACK L.L.P. 1201 Third Avenue Suite 3200 Seattle, Washington 98101 | Casie D. Collignon BAKER & HOSTETLER LLP 1801 California Street Suite 4400 Denver, Colorado 80202 |

44.     The Parties agree that Plaintiffs will take the lead in drafting responses to any objections to the Settlement, including any appeals filed by the objectors.  However, both Parties retain their rights to make any argument(s) in response to any objector.

45.     Any Settlement Class Member who fails to comply with the requirements for objecting in this Section VIII shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.   The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Section VIII.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Final Judgment to be entered upon final approval shall be pursuant to appeal and not through a collateral attack.

## IX.     DISPUTE RESOLUTION FOR CLAIMS

46.     The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the Claimant is a Settlement Class member; (2) the Claimant has provided all information needed to complete the claim form, including any documentation that may be necessary to reasonably support the claimed ordinary or extraordinary expenses, described in Paragraphs 18 and 19, above; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the Claimant has suffered the claimed losses as a result of the Security Incidents (collectively, "Complete and Plausible").  The Claims Administrator may, at

any time, request from the Claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the Claim ("Claim Supplementation"), e.g., documentation requested on the claim form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

47.    The Claims Administrator's initial review will be limited to a determination of whether the Claim is Complete and Plausible. For any such Claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those Claims to the Parties (one Class Counsel shall be designated to fill this role for all Plaintiffs). If the Parties agree that the Claimant's Claim is Complete and Plausible then the Claim shall be paid. If the Parties agree that the Claim is incomplete and/or implausible, it shall be denied. If the Parties do not agree, after meeting and conferring, then the Claim shall be referred to a mediator pursuant to agreement between the Parties (the "Claims Referee"), for resolution.

48.    Upon receipt of an incomplete or unsigned claim form or a claim form that is not accompanied by sufficient documentation to determine whether the Claim is Complete and Plausible, the Claims Administrator shall request Claim Supplementation and give the Claimant thirty (30) days to cure the defect before rejecting the Claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such claim form or thirty (30) days from the Effective Date, whichever comes later. In the event of unusual circumstances interfering with compliance during the 30-day period, the Claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the

Effective Date. The COVID-19 pandemic, in and of itself, does not constitute good cause, but a Claimant may show good cause by providing information regarding why the COVID-19 pandemic caused the Claimant to fail to comply with the 30-day period. If the defect is not cured, then the Claim will be deemed invalid and there shall be no obligation to pay the Claim.

49. Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each Claim. If, after review of the Claim and all documentation submitted by the Claimant, the Claims Administrator determines that such a Claim is Complete and Plausible, then the Claim shall be paid. If the Claim is not Complete and Plausible because the Claimant has not provided all information needed to complete the claim form and evaluate the Claim, then the Settlement Administrator may reject the Claim without any further action. If the Claim is rejected in whole or in part, for other reasons, then the Claim shall be referred to the Parties. If the Parties agree that the Claimant's Claim is incomplete and/or implausible then no further action shall be taken. If the Parties agree that the Claimant's Claim is Complete and Plausible then the Claim shall be paid. If the Parties do not agree, after meeting and conferring, then the Claim shall be referred to the Claims Referee for resolution.

50. Settlement Class members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination. If the Claimant approves the final determination, then the approved amount shall be the amount to be paid. If the Claimant does not approve the final determination within thirty (30) days, then the dispute will be submitted to the Parties within an additional ten (10) days.

51.     If any dispute cannot be resolved by the Parties and is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days.  Alternatively, the Claims Referee may make any other final determination of the dispute or request further supplementation of a Claim within thirty (30) days. The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Security Incidents.  The Claims Referee shall have the power to approve a Claim in full or in part.  The Claims Referee's decision will be final and non-appealable.  Any Claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the Claim through third party sources, and failure to cooperate shall be grounds for denial of the Claim in full.  The Claims Referee shall make a final decision within thirty (30) days of receipt of all supplemental information requested.

## X.     NOTICE AND ADMINISTRATION EXPENSES

52.     All costs of notice and administration, including, without limitation, the fees and expenses of the Claims Administrator and Claims Referee, shall be paid separately by UnityPoint directly to the Claims Administrator, Claims Referee, or other party.

## XI.     ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

53.     UnityPoint will pay the attorneys' Fees and Expenses incurred by Class Counsel in the Action, as approved by the Court, in an amount not to exceed $1,575,000.00 (One Million Five Hundred and Seventy-Five Thousand Dollars).

54.     To facilitate the Parties' agreement on attorneys' fees and costs and reimbursement in this Action, Plaintiffs and their attorneys agree not to seek more than $1,575,000.00 (One

Million Five Hundred and Seventy-Five Thousand Dollars) in fees, inclusive of costs, and UnityPoint agrees not to contest a request for attorneys' fees and costs by Plaintiffs and their attorneys so long as the request does not exceed $1,575,000.00 (One Million Five Hundred and Seventy-Five Thousand Dollars). UnityPoint shall pay any award of attorneys' fees and costs in addition to any benefits provided to Class Members and the costs of notice and settlement administration. The Parties did not discuss or agree upon payment of attorneys' fees and costs until after they agreed on all materials terms of relief to the Settlement Class.

55.     UnityPoint also agrees not to contest a request for incentive awards of up to $2,500.00 (Two Thousand Five Hundred Dollars) each to Plaintiffs Yvonne Mart Fox, Grant Nesheim, Danielle Duckley, and Shelley Kitsis. UnityPoint shall pay any incentive awards in addition to any benefits provided to Class Members and the costs of notice and settlement administration and separate from any award of attorneys' fees and costs. The Parties did not discuss or agree upon payment of incentive awards until after they agreed on all materials terms of relief to the Settlement Class.

56.     Any attorneys' fees and costs awarded by the Court as well as any incentive awards awarded by the Court shall be due and payable within 30 days after the later of the Court's entry of Final Judgment or the Court's entry of an Order awarding attorneys' fees and costs, regardless of the Effective Date of Settlement. If the Final Judgment or the Order awarding attorneys' fees and costs is reversed or altered, Class Counsel shall repay the fees and costs awarded in accordance with subsequent Orders or proceedings in the case.

57.     UnityPoint shall pay any attorney's fees and costs, and any incentive award to the Class Representatives, as set forth above in Paragraphs 53, 54, 55, and 56, to an account established

by Class Counsel. Class Counsel shall thereafter distribute the award of attorneys' fees and costs among Plaintiffs' counsel and the incentive awards to Class Representatives.

58. One or more Plaintiffs' counsel shall have the option to receive any attorneys' fees and costs awarded hereunder in the form of periodic payments in lieu of a lump sum payment. The Parties authorize a qualified settlement fund under 26 U.S.C. § 468B to be established with any qualified trustee, including the Settlement Administrator, if any Plaintiffs' counsel desires to receive periodic payments in lieu of a lump sum payment of attorneys' fees and costs. This is solely for convenience, and UnityPoint shall have no further responsibility to pay attorneys' fees or costs to Class Counsel after fulfilling its obligations as set forth herein. Plaintiffs' counsel shall be responsible for any and all costs associated with this provision.

59. The amount(s) of any award of attorneys' fees and costs, and the incentive award to the Class Representatives, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees and expenses, and/or incentive award ordered by the Court to the Class Counsel or Class Representatives shall affect whether the Settlement becomes effective and final or constitute grounds for cancellation or termination of this Settlement Agreement.

## XII.   PRELIMINARY APPROVAL OF SETTLEMENT

60. As soon as practicable after the execution of the Settlement Agreement, Class Counsel and UnityPoint's Counsel shall jointly submit this Settlement Agreement to the Court and file a Motion for Preliminary Approval of the Settlement with the Court requesting entry of the Preliminary Approval Order attached to Plaintiffs' Motion for Preliminary Approval, or an order substantially similar to such form, requesting, *inter alia*:

a. Certification of the Settlement Class for settlement purposes only;

b. Preliminary approval of the Settlement Agreement as set forth herein;

c. Appointment of Class Counsel as counsel for the Settlement Class;

d. Appointment of Class Representatives as representatives for the Settlement Class;

e. Approval of a form of notice, which includes a notice to be individually mailed to the Settlement Class members, as well as a detailed long form notice that will be posted on the Settlement Website, addressed in Paragraph 29-c;

f. Appointment of Epiq Class Action & Claims Solutions, Inc. as Claims Administrator, or such other provider of claims administrative services, as may be jointly agreed by the Parties.

## XIII.   FINAL JUDGMENT

61.      If the Preliminary Approval Order is entered by the Court, Class Counsel will move the Court, within the time frames contemplated by the Preliminary Approval Order, for entry of a Final Judgment.

## XIV.   TERMINATION

62.      If the Effective Date of Settlement does not occur, or if the Settlement is terminated or fails to become effective for any reason, then (a) the Parties shall be restored to their respective positions in the Action and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order

entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

## XV.    NO ADMISSION OF WRONGDOING OR LACK OF MERIT

63.    The terms of this Settlement (whether the Settlement becomes final or not), the negotiations leading up to this Settlement, the fact of the Settlement, and the proceedings taken pursuant to the Settlement, shall not: (a) be construed as an admission of liability or an admission of any claim or defense on the part or any Party, in any respect; (b) form the basis for any claim of estoppel by any third-party against any of the Released Parties; or (c) be admissible in any action, suit, proceeding, or investigation as evidence, or as an admission of any wrongdoing or liability whatsoever by any Party, or as evidence of the truth of any of the claims or allegations contained in the Complaint.

## XVI.    MISCELLANEOUS PROVISIONS

64.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

65.    The Parties to the Settlement intend and agree that the Settlement is a final and complete resolution of all disputes related to the Litigation by the Class Representatives and the Settlement Class members who have not timely excluded themselves from the Settlement.

66.    The Parties agree that the benefits provided herein and the other terms of the Settlement were negotiated at arm's length in good faith by the Parties to the Settlement with the assistance of an experienced and independent mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

67.    This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their successors-in-interest.

68.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

69.     The Parties hereby irrevocably submit to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or disputing arising out of or relating to this Settlement as embodied in the Settlement or its applicability, and agree that they will not oppose the designation of such suit, action, proceeding, or dispute as a related case to the Action.

70.     The Settlement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to the Settlement shall exchange among themselves original signed counterparts.  Electronically transmitted signatures are valid signatures as of the date thereof.

71.     The construction, interpretation, operation, effect, and validity of the Settlement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Wisconsin, without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.  The Parties understand and agree that any disputes arising out of the Settlement shall be governed and construed by and in accordance with the laws of the State of Wisconsin, regarding reference or regard to choice-of-law principles.

72.     The Settlement shall not be construed more strictly against one Party to the Settlement than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Settlement is the result of arm's-length negotiation between the Parties to the Settlement, and all Parties to the Settlement have contributed substantially and materially to the preparation of the Settlement.

73.     Any and all counsel and Parties to the Settlement who execute the Settlement and any of the exhibits hereto, or any related Settlement documents, represent that they have reviewed

and understand those documents and have the full authority to execute the Settlement, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement to effectuate its terms.

74. Class Counsel and UnityPoint's counsel agree to recommend approval of the Settlement by the Court and to undertake their best efforts and cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement and the entry of the Final Judgment.

75. UnityPoint agrees to comply with the CAFA notice provisions set out in 28 U.S.C. § 1715.

**IN WITNESS WHEREOF**, the Parties have, through their respective counsel, executed

this Settlement as of the date first above written.

**Approved as to form and content by counsel for Plaintiffs and the Settlement Class:**

By:/s/ _Cari C Laufenberg_

Cari Campen Laufenberg (admitted *pro hac vice*)
T. David Copley (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
claufenberg@kellerrohrback.com
dcopley@kellerrohrback.com
adaniel@kellerrohrback.com


Christopher Springer (admitted *pro hac vice*)
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com


By:/s/ _Ronald H. Marron_

Ronald A. Marron
Kas L. Gallucci
Michael T. Houchin
Lilach Halperin
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92103
Tel.: (619) 696-9006
Fax: (619) 564.6665
ron@consumersadvocates.com
kas@consumersadvocates.com
mike@consumersadvocates.com
lilach@consumersadvocates.com

By:/s/ _____
Robert L. Teel
*Of Counsel* to the
**LAW OFFICES OF RONALD A. MARRON**
1425 Broadway, Mail Code: 20-6690
Seattle, WA 98122
Tel.: (866) 833-5529
Fax: (855) 609-6911
lawoffice@rlteel.com


**Approved as to form and content by counsel for UnityPoint:**

By:/s/ _____
Casie D. Collignon
Paul G. Karlsgodt
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Tel.: (303) 861-0600
Fax: (303) 861-7805
ccollignon@bakerlaw.com
pkarlsgodt@bakerlaw.com


Emily M. Feinstein
**QUARLES & BRADY LLP**
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 283-2470
Fax: (608) 294-4912
Emily.feinstein@quarles.com

**EXHIBIT A**


**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

**Court Approved Security Measures and Confirmatory Discovery:** UnityPoint has verified and Plaintiffs have or will confirm that these measures relating to UnityPoint's information security are presently in place and/or will be put in place.

UnityPoint shall adopt, pay for, implement, and/or maintain the business practice commitments, or substantially similar commitments, related to information security to safeguard Settlement Class members' personally identifiable information as set forth below, at least two years from the date of the Settlement Agreement:







**EXHIBIT B**

UnityPoint Health Settlement
c/o Epiq Class Action and Claims Solutions, Inc.
10300 S.W. Allen Blvd.
Beaverton, OR 97005

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

## LEGAL NOTICE BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

*A court authorized this notice.*
*This is not a solicitation from a lawyer.*

**If you were sent notice by UnityPoint Health in 2018 that your personal information may have been compromised as a result of a cyberattack, this Settlement affects your rights.**

This Notice contains important information about a proposed class action Settlement with UnityPoint Health. If you are a Settlement Class member, you are entitled to claim benefits and your legal rights will be affected whether or not you take action. Detailed information about the Settlement is available online at [www.settlementwebsite.com] or by calling toll-free [phone number].

<<BARCODE>>

<<NAME LINE 1>>
<<NAME LINE 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

■                                                                                    ■

<<MailID>>

### THIS IS NOT A CLAIM FORM

### TO FILE A CLAIM VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER]

### PERSONAL INFORMATION UPDATE FORM

If you wish to notify the Settlement Administrator of any change in your contact information, you may fill out and return this card.

First Name: | | | | | | | | | |   MI: | |   Last Name: | | | | | | | | | | | | |

Mailing Address: | | | | | | | | | | | | | | | | | | | | | |

City: | | | | | | | | | | | | | |   State: | |   ZIP Code: | | | | | |

Email Address: | | | | | | | | | | | | | | | | | | | | | |

■                                                                                    ■

**What is this Notice for?** This Notice contains information about a proposed class action Settlement with UnityPoint Health in the lawsuit *Fox v. Iowa Health System, d/b/a/ UnityPoint Health*, No. 18-CV-327-JDP (W.D. Wisc.), relating to two cyberattacks that UnityPoint Health announced in 2018.

**Who is included in the Settlement?** Settlement Class members include all persons to whom UnityPoint Health sent notification in 2018 that their personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of cyberattacks. These cyberattacks are described as the First Data Breach and the Second Data Breach in the Second Amended Class Action Complaint, which is available online at [www.settlementwebsite.com].

**What benefits can I receive?** Settlement Class members can obtain several valuable benefits described below. More information about these benefits is available online at [www.settlementwebsite.com] or by calling toll-free [phone number].

1. **One year of comprehensive credit monitoring and identity theft protection services** through Identity Guard's Total Plan, which can be deferred for one year;
2. **Cash payment for up to $1,000 of Ordinary Expenses**, including up to 3 hours of time valued at $15 per hour as well as documented out-of-pocket costs related to the Security Incidents, such as the costs of credit monitoring and identity theft protection services; and
3. **Cash payment for up to $6,000 of documented Extraordinary Expenses** such as documented out-of-pocket costs or losses related to identity theft or fraud, including up to 10 additional hours of time valued at $15 per hour.

**How can I participate in the Settlement and receive benefits?** You must file a claim to obtain a cash payment and enroll in credit monitoring and identity theft protection services. You may submit a claim online at [www.settlementwebsite.com]. You also may submit a claim by mail and can obtain a paper copy of the claim form online or by calling toll-free [phone number]. **All claims must be submitted online or postmarked on or before Month Day, Year.**

**What are my other options?** If you do nothing, you will not receive benefits and will release any legal claims against UnityPoint Health related to the Security Incidents. If you do not want to be legally bound by the Settlement, you may exclude yourself and will not receive benefits. You also may object to the Settlement. To exclude yourself or object to the Settlement, you must follow the instructions available online at [www.settlementwebsite.com] or by calling toll-free [phone number]. Any requests for exclusion or objections must be postmarked or filed on or before Month Day, Year.

**What happens next?** The Court will hold a hearing on **Month Day, Year** to consider whether to approve the Settlement and award up to $1,575,000 for attorneys' fees and costs as well as up to $2,500 to each of the four Class Representatives. You may appear at the hearing, either personally or through an attorney. More information is available online at [www.settlementwebsite.com] or by calling toll-free [phone number].



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL        PERMIT NO 581        PORTLAND OR

POSTAGE WILL BE PAID BY ADDRESSEE

UNITYPOINT HEALTH SETTLEMENT
c/o Epiq Class Action and Claims Solutions, Inc.
10300 S.W. Allen Blvd.
Beaverton, OR 97005

**EXHIBIT C**

*A court authorized this Notice. This is not a solicitation from a lawyer.*

**THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN HAS PRELIMINARILY APPROVED A CLASS ACTION SETTLEMENT THAT MAY AFFECT YOUR RIGHTS.**

**If you were sent notice by UnityPoint Health in April and/or July 2018 that your personal information may have been compromised as a result of data security incidents, this Settlement may affect your rights.**

- A class action Settlement has been reached under which your rights may be affected.

- This proposed Settlement will resolve a class action lawsuit pending in the United States District Court for the Western District of Wisconsin, titled *Fox, et al. v. Iowa Health System, d/b/a UnityPoint Health*, Case No. 18-CV-327-JDP (the "Action"). On **[Preliminary Approval Date]**, the Court preliminarily approved the Settlement.

- If you were sent notice by UnityPoint Health in April and/or July 2018 that your personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of data security incidents, you are a member of the Settlement Class. These incidents are described as the First Data Breach and the Second Data Breach in the Second Amended Class Action Complaint in the lawsuit. A full copy of the Second Amended Class Action Complaint may be reviewed at the Settlement Website: [www.settlementwebsite.com].

- This Notice is to advise you of the status of the lawsuit, the terms of the proposed Settlement, and your rights in connection with the proposed Settlement. If you are a Settlement Class member, you may be entitled to a cash payment and one year of comprehensive credit monitoring. **To receive these benefits, you must file a claim as detailed below.** You also have the right to object to the Settlement. In the alternative, you may exclude yourself from the Settlement. You may also do nothing. These options are explained below.

- This is not a lawsuit against you. A full copy of the Settlement Agreement may be reviewed at the Settlement Website at [www.settlementwebsite.com]. This Notice contains only a summary of the Settlement Agreement.

- Read this notice carefully. **If you are a Settlement Class member, you are entitled to claim benefits and your legal rights will be affected whether or not you take action.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **ACTION** | **EXPLANATION** | **DUE DATE** |
| **OBTAIN BENEFITS UNDER THE SETTLEMENT AND SUBMIT A CLAIM FORM** | To obtain benefits under the Settlement, Settlement Class members must file a timely claim. For more information about submitting a claim, see [www.settlementwebsite.com/link]. If you submit a claim and receive benefits under the Settlement, you give up your right to sue UnityPoint Health about the claims in the Action. | **Claims must be filed on or before [Notice Date + 120 Days].** |
| **OBJECT TO THE SETTLEMENT** | Settlement Class members may object to the Settlement. For more information about objecting to the Settlement, see [www.settlementwebsite.com/link]. If you object, you will still be eligible to receive benefits under the Settlement if you file a timely claim.<br><br>If you file an objection, you may appear at the Final Approval Hearing, either personally or through an attorney. For more information about submitting a request to speak at the Final Approval Hearing, see [www.settlementwebsite.com/link]. | **Objections must be filed on or before [Notice Date + 60 Days].** |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | If you choose to exclude yourself (opt out) from the Settlement, you will not be included in the Settlement, you will not receive any benefits under the Settlement, and you will retain any right you currently have to sue UnityPoint Health about the claims in the Action. | **Requests for exclusion must be filed and mailed on or before [Notice Date + 60 Days].** |
| **DO NOTHING** | If you do not make a claim or exclude yourself from the Settlement within the deadlines stated above, you will not receive any benefits under the Settlement, and you will give up your right to sue UnityPoint Health about the legal claims asserted in the Action. | |

**YOU MUST SUBMIT A CLAIM FORM TO RECEIVE SETTLEMENT BENEFITS.**
YOU CAN SUBMIT A CLAIM FORM ONLINE OR MAIL A CLAIM FORM TO THE CLAIMS ADMINISTRATOR.

**THE DEADLINE TO FILE A CLAIM FORM IS [NOTICE DATE + 120 DAYS].**

**QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].**

You received notice of this Settlement because records show that you were sent notice by UnityPoint Health in April and/or July 2018 that your personal information may have been compromised a result of the data security incidents alleged in the Second Amended Class Action Complaint. If these records are correct, you are a Settlement Class member, and you are entitled to receive Settlement benefits if you submit a Claim Form before the deadline and the Court grants final approval of the Settlement. You also have other options as described in this Notice.

**WHAT IS THIS LAWSUIT ABOUT?**

The Class Representatives filed a complaint against UnityPoint Health. The complaint alleges that UnityPoint Health acted unlawfully by failing to prevent the data security incidents. The Class Representatives claim that UnityPoint Health failed to fulfill its legal duty to adequately secure and safeguard the personal and protected health information of the Class Representatives and Settlement Class members, and that UnityPoint Health breached promises made to the Class Representatives and Settlement Class members concerning the security of their information.

UnityPoint Health denies the allegations asserted by the Class Representatives in the Action, and contends that UnityPoint Health was and is in compliance with applicable state and federal law. The Court has not made any ruling on the ultimate merits of this case. The Class Representatives and UnityPoint Health have agreed to settle the Action, subject to the approval of the Court.

**HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?**

If you were sent notice by UnityPoint Health in April and/or July 2018 that your personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of the data security incidents described as the First Data Breach and the Second Data Breach in the Second Amended Class Action Complaint ("Security Incidents"), you are a member of the Settlement Class.

**WHAT DOES THE SETTLEMENT PROVIDE?**

If the Court grants final approval, UnityPoint Health will provide the Settlement benefits listed below to Settlement Class members. You can review at the Claim Form at [www.settlementwebsite.com/link] to see an explanation of the types of loss that are considered Ordinary Expenses or Extraordinary Expenses as well as specific documentation requirements for claimed losses. These benefits are not mutually exclusive, such that you may claim any one or more of the following.

**1. Enrollment in a comprehensive credit monitoring service for one year**. The credit monitoring will be provided through Identity Guard's Total Plan, powered by IBM Watson, and shall include at least the following, or similar, services: Up to $1 million dollars reimbursement insurance from AIG covering losses due to identity theft and stolen funds; three bureau credit

**QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].**

monitoring providing notice of certain changes to the enrolled Settlement Class member's credit profile; real time authentication alerts in as little as three seconds when someone attempts to make a change to enrolled Settlement Class members' personal account information within Identity Guard's network; alerts based on searches of payday-loan providers and court records and monitoring of the top ten largest U.S. financial institutions, for attempted or actual fraudulent use of the enrolled Settlement Class members' information; Dark Web Monitoring that will provide notification if an enrolled Settlement Class member's information such as Social Security number, credit card numbers, financial account numbers, and health insurance number are found on the Dark Web; threat Alerts powered by IBM "Watson's" artificial intelligence of potential threats relevant to the enrolled Settlement Class members found by IBM Watson's artificial intelligence, for instance: breaches, phishing scams, and malware vulnerabilities; customer support and victim assistance provided by Identity Guard; anti-phishing applications for iOS & Android Mobile devices; and safe browsing software for personal computers and Macs to help protect the enrolled Settlement Class member's computer(s) against malicious content with an add-on for Safari, Chrome, and Firefox web browsers that delivers proactive malware protection by blocking various malware delivery channels including phishing, malvertisements, and Flash (the extension also blocks content and tracking cookies to help protect personal information).

This credit monitoring benefit can be deferred for one year upon request.

To receive this credit monitoring benefit, you must submit a Claim Form by **[Notice Date + 120 Days]** and follow the enrollment instructions that will be emailed or mailed to you following Final Approval of the Settlement.

**2. Ordinary out-of-pocket expenses.** All Settlement Class members who submit a valid Claim are eligible to recover compensation for 100% of their ordinary out-of-pocket expenses, not to exceed $1,000.00 per Settlement Class member, that were incurred between February 7, 2018 and the Claims Deadline, as a result of the Security Incidents, including: (i) long distance telephone charges; (ii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incidents), and text messages (if charged by the message and incurred solely as a result of the Security Incidents); (iii) postage; (iv) documented costs associated with miscellaneous expenses such as notary, fax, postage, copying, and mileage; (v) documented costs associated with credit freezes; (vi) documented costs of credit monitoring services active between February 7, 2018 and one year after the Claims Deadline; and (vii) up to three (3) hours of lost time compensated at $15.00 per hour.

To claim ordinary out-of-pocket expense reimbursements, a Settlement Class member must: (i) provide identification of the identity theft event(s); (ii) attest that he or she believes that the losses or expenses were incurred as a result of the Security Incidents, and (iii) provide reasonable documentation of the out-of-pocket losses claimed. Documentation will not be required for lost time.

Settlement Class members seeking to recover documented costs of credit monitoring services active between February 7, 2018 and one year after the Claims Deadline incurred as a result of the

QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].

4

Security Incidents, discussed above, the Claimant must submit either (a) a receipt showing a one year subscription to a credit monitoring service between February 7, 2018 and one year after the Claims Deadline incurred as a result of the Security Incidents; or (b) at least three receipts showing consecutive monthly payments to a credit monitoring service between February 7, 2018 and one year after the Claims Deadline incurred as a result of the Security Incidents and an attestation that the Claimant intends to continue subscribing to such service through at least one year after the Claims Deadline. In the event that a Claimant has subscribed to a credit monitoring service on a monthly basis and has not yet made three consecutive monthly payments at the time the Claimant files a Claim, the Claimant will be advised of the opportunity to provide the requisite documentation in the Dispute Resolution Process described in the Settlement Agreement.

**3. Extraordinary expense reimbursement**. All Settlement Class members who submit a valid Claim are also eligible to recover compensation for 100% of their documented extraordinary monetary out-of-pocket losses and extraordinary compensable additional lost time incurred on or after February 7, 2018, as a result of the Security Incidents, in an amount not to exceed $6,000.00 per Settlement Class member. Extraordinary out-of-pocket expense reimbursements shall include, but are not limited to: (i) documented professional fees and other costs incurred to address identity fraud or theft, including but not limited to falsified tax returns, new account fraud, existing account fraud, account takeover, and medical-identity theft; (ii) other documented unreimbursed losses, fees, or charges incurred as a result of identity fraud or theft, including, but not limited to (a) unreimbursed bank fees, (b) unreimbursed card reissuance fees, (c) unreimbursed overdraft fees, (d) unreimbursed charges related to unavailability of funds, (e) unreimbursed late fees, (f) unreimbursed over-limit fees, (g) unreimbursed charges from banks or credit card companies, and (h) interest on payday loans due to card cancellation or due to over-limit situations; and (ii) reimbursement for up to five (10) additional hours of lost time (compensated at $15.00 per hour), not reimbursed as ordinary compensable lost time, spent resolving documented extraordinary losses.

To claim extraordinary out-of-pocket expense reimbursements, a Settlement Class member must: (i) provide identification of the identity theft event(s); (ii) attest that he or she believes that the losses or expenses were incurred as a result of the Security Incidents, and (iii) provide reasonable documentation of the out-of-pocket losses claimed.

Claims for extraordinary compensable additional lost time will be provided to Settlement Class members subject to the following: (i) reimbursement for up to five (5) hours of extraordinary compensable additional lost time will require an attestation that the time was spent as a result of the documented identity theft or fraud; and (ii) reimbursement for more than five (5) hours will require a documented or written showing of how the time was expended and why it was reasonably necessary.

**4. Fees, Costs and Expenses Associated with the Settlement**: In addition to the payment of timely and valid claims, the parties have agreed that UnityPoint Health will pay for (1) all fees, costs and expenses associated with the administration of the Settlement; (2) an Attorneys' Fees and Expenses award, to be requested by Class Counsel, not to exceed One Million Five Hundred and Seventy Five Thousand Dollars ($1,575,000); and (3) an incentive award, to be requested by

QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].

5

the Class Representatives, not to exceed Two Thousand Five Hundred Dollars ($2,500) per Class Representative ($10,000 in Total).

## HOW DO I RECEIVE A BENEFIT?

If you are an eligible Settlement Class member and you wish to receive a payment from the Settlement, then you must make a valid Claim by **[Notice Date + 120 Days]**.

Claims may be submitted online at [www.settlementwebsite.com] by **[Notice Date + 120 Days]**. Claims may also be submitted by mail, and you can obtain a copy of the claim form online or by calling the Claims Administrator toll-free at [phone number] to request that a Claim Form be mailed to you.

Claims submitted or postmarked after **[Notice Date + 120 Days]** will not be paid.

If the Settlement is approved by the Court after the Final Fairness Hearing, and if you have timely submitted a valid Claim for lost time and/or documented expenses by the deadline of **[Notice Date + 120 Days]**, you will be sent cash payment as set forth herein.

If you have submitted a valid Claim for credit monitoring by the deadline of **[Notice Date + 120 Days]**, you will be emailed or mailed instructions about how to enroll in your credit monitoring and identity theft protection benefits.

## HOW WILL I RECEIVE PAYMENTS?

The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the Claimant is a Settlement Class member; (2) the Claimant has provided all information needed to complete the Claim, including any documentation that may be necessary to reasonably support the expenses claimed; and (3) if the information submitted could lead a reasonable person to conclude that more likely than not the Claimant has suffered the claimed losses as a result of the Security Incidents (collectively, "Complete and Plausible"). The Claims Administrator may, at any time, request from the claimant in writing additional information as the Claims Administrator may reasonably require in order to evaluate the Claim ("Claim Supplementation"), e.g., documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

The Claims Administrator's initial review will be limited to a determination of whether the Claim is Complete and Plausible. For any such Claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those Claims to the Parties (one Class Counsel shall be designated to fill this role for all Plaintiffs). If the Parties agree that the Claimant's Claim is Complete and Plausible then the Claim shall be paid. If the Parties agree that the Claim is incomplete and/or implausible, it shall be denied. If the Parties do not agree, after meeting and conferring, then the Claim shall be referred to a mediator pursuant to agreement between the Parties (the "Claims Referee") for resolution.

**QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].**

Upon receipt of an incomplete or unsigned Claim or a Claim that is not accompanied by sufficient documentation to determine whether the Claim is Complete and Plausible, the Claims Administrator shall request Claim Supplementation and give the Claimant 30 days to cure the defect before rejecting the Claim. Requests for Claim Supplementation shall be made within thirty (30) days of the receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes latest. In the event of unusual circumstances interfering with compliance during the 30-day period, the Claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date. The COVID-19 pandemic, in and of itself, does not constitute good cause, but a Claimant may show good cause by providing information why the COVID-19 pandemic caused the Claimant to fail to comply with the 30-day period. If the defect is not cured, then the Claim will be deemed invalid and there shall be no obligation to pay the Claim.

Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each Claim. If, after review of the Claim and all documentation submitted by the Claimant, the Claims Administrator determines that such a Claim is Complete and Plausible, then the Claim shall be paid. If the Claim is not Complete and Plausible because the Claimant has not provided all information needed to complete the Claim Form and evaluate the Claim, then the Claims Administrator may reject the Claim without any further action. If the Claim is rejected in whole or in part, for other reasons, then the Claim shall be referred to the Parties. If the Parties agree that the Claimant's Claim is incomplete and/or implausible, then no further action shall be taken. If the Parties agree that the Claimant's Claim is Complete and Plausible, then the claim shall be paid. If the Parties do not agree, after meeting and conferring, then the Claim shall be referred to the Claims Referee.

Settlement Class members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination. If the Claimant approves the final determination, then the approved amount shall be the amount to be paid. If the Claimant does not approve the final determination within thirty (30) days, then the dispute will be submitted to the Parties within an additional ten (10) days.

If any dispute cannot be resolved by the Parties and is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days. Alternatively, the Claims Referee may make any other final determination of the dispute or request further supplementation of a Claim within thirty (30) days. The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Security Incidents. The Claims Referee shall have the power to approve a Claim in full or in part. The Claims Referee's decision will be final and non-appealable. Any Claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental

information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the Claim through third party sources, and failure to cooperate shall be grounds for denial of the Claim in full. The Claims Referee shall make a final decision within thirty (30) days of receipt of all supplemental information requested.

## HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

You have the right to exclude yourself from (i.e., "opt-out" of) the Settlement Class. If you exclude yourself, you will give up the right to receive any payment and the right to object to the Settlement, but you will not release the claims that are released by the Settlement.

To exclude yourself from the Settlement Class, you must inform the Claims Administrator in writing of your name, address, and your intention to be excluded. All requests for exclusion must be submitted, signed, and mailed to the Claims Administrator and postmarked no later than **[Notice Date + 60 Days]**. If you return a late request for exclusion, the request will be deemed invalid, you will remain a member of the Settlement Class, and you will be bound by all of the terms of the Settlement.

**YOU CANNOT EXCLUDE YOURSELF BY TELEPHONE OR BY SENDING AN EMAIL.**

**DO NOT SUBMIT BOTH A CLAIM FORM AND A REQUEST FOR EXCLUSION. IF YOU SUBMIT BOTH A CLAIM FORM AND A REQUEST FOR EXCLUSION, THE REQUEST FOR EXCLUSION WILL BE DISREGARDED.**

## HOW DO I OBJECT TO THE SETTLEMENT?

If you do not exclude yourself, you have the right to object to the Settlement. To object, you must file a written statement with the Clerk of the United States District Court for the Western District of Wisconsin, United States District Court, 120 North Henry Street, Room 320, Madison, Wisconsin 53703, no later than **[Notice Date + 60 Days]**. You must also mail a copy of your objection to the following three places postmarked no later than **[Notice Date + 60 Days]**:

| COURT | CLASS COUNSEL | UNITYPOINT'S COUNSEL |
|---|---|---|
| United States District Court for the Western District of Wisconsin United States District Court 120 North Henry Street Room 320 Madison, Wisconsin 53703 | Cari C. Laufenberg KELLER ROHRBACK L.L.P. 1201 Third Avenue Suite 3200 Seattle, Washington 98101 | Casie D. Collignon BAKER & HOSTETLER LLP 1801 California Street Suite 4400 Denver, Colorado 80202 |

Your objection must include: (a) your full name, address, telephone number, and e-mail address (if any); (b) information identifying you as a Settlement Class member; (c) a written statement of

**QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].**

all grounds for the objection, accompanied by any legal support you would like to submit; (d) the identity of all lawyers (if any) representing you; (e) the identity of all lawyers (if any) who will appear at the Final Fairness Hearing on your behalf; (f) a list of all persons you will be called to testify at the Final Fairness Hearing in support of your objection; (g) a statement confirming whether you intend to personally appear and/or testify at the Final Fairness Hearing; and (h) your signature or the signature of your duly authorized lawyer or other duly authorized representative.

In addition to the foregoing, objections should also provide the following information: (a) a list, by case name, court, and docket number, of all other cases in which you (directly or through a lawyer) filed an objection to any proposed class action settlement within the last three (3) years; (b) a list, by case name, court, and docket number, of all other cases in which your lawyer (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last three (3) years; and (c) a list, by case number, court, and docket number, of all other cases in which you have been a named plaintiff in any class action or served as a lead plaintiff or class representative.

You will not be excluded from the Settlement by filing an objection.

## DO I HAVE A LAWYER IN THE CASE?

For purposes of this Settlement, the Class Representatives and the Settlement Class are represented by Cari Campen Laufenberg, of Keller Rohrback L.L.P; Ronald A. Marron, of the Law Offices of Ronald A. Marron, APLC, and Robert L. Teel, Of Counsel to the Law Offices of Ronald A. Marron, APLC. You will not be personally charged for their work on the case. Instead, Defendant has agreed to separately pay Class Counsel's fees and expenses up to $1,575,000, subject to Court approval. If you want to be represented by your own lawyer, you may hire one at your own expense.

## IS THERE A RELEASE OR WAIVER OF CLAIMS?

Unless you affirmatively exclude yourself, you will agree to the "Release" of claims as described in Section V of the Settlement Agreement. That means that you cannot sue, continue to sue, or be part of any other lawsuit against UnityPoint Health or other Released Parties for any of the Released Claims. It also means that the Court's orders will apply to you and legally bind you. You may view the Settlement Agreement for the full language of the legal claims you will give up if you remain in the Settlement by requesting a copy from the Claims Administrator.

## WILL THERE BE A HEARING?

The Court will hold a Final Fairness Hearing for the Settlement on **[Date and Time]** in the **United States District Court for the Western District of Wisconsin, United States District Court, 120 North Henry Street, Madison, Wisconsin 53703**. If objections have been received, the Court will consider them during this hearing. The Final Fairness Hearing may be rescheduled to a later

time, which will be listed at the Court's website. If there are no objections, the Settlement will become final shortly after the Court grants final approval. If there are objections, the Settlement will become final after the Court grants final approval and either the time to appeal has expired or any appeal filed has been resolved.

Before attending the Hearing in person, check the Claims Administrator website, [www.settlementwebsite.com]. It will provide updated information if the Court changes the Hearing date or decides to hold the Hearing telephonically or via a web-based service.

**You Are Not Required to Attend the Final Fairness Hearing.** However, you may appear or may hire your own attorney to appear at the Final Fairness Hearing.

| REMINDER OF IMPORTANT SETTLEMENT DATES AND DEADLINES |
|:---:|

The following are important dates and deadlines under the proposed Settlement:

- **Last Day to Mail Requests for Exclusion: [Notice Date + 60 Days]**

- **Last Day to File and Serve Objections: [Notice Date + 60 Days]**

- **Last Day to Submit or Mail a Claim Form: [Notice Date + 120 Days]**

- **Final Fairness Hearing: [Date and Time]**

QUESTIONS? VISIT [WWW.SETTLEMENTWEBSITE.COM] OR CALL TOLL-FREE [PHONE NUMBER].

10