# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| YVONNE MART FOX, GRANT NESHEIM, DANIELLE DUCKLEY, and SHELLEY KITSIS, individually and on behalf of all others similarly situated,<br><br>                    *Plaintiffs,*<br><br>          *v.*<br><br>IOWA HEALTH SYSTEM, doing business as UNITYPOINT HEALTH, an Iowa non-profit corporation,<br><br>                    *Defendant.* | **Case No.: 3:18-cv-00327-JDP** |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................1

II.    BACKGROUND ..............................................................................................................2

    A.    The Litigation ....................................................................................................3

    B.    Settlement and Administration ...........................................................................5

III.   THE REQUESTED ATTORNEYS' FEES SHOULD BE AWARDED ..........................7

    A.    The Lodestar Method Demonstrates the Requested Fees Are Reasonable ............7

    B.    The Seventh Circuit Factors Support the Requested Fees ..................................13

        1.    Risk of Nonpayment ..............................................................................13

        2.    Quality of the Attorneys' Performance ...................................................15

        3.    Amount of Work Necessary to Resolve the Litigation.............................16

        4.    The Stakes of the Case...........................................................................17

IV.   THE REQUESTED EXPENSES ARE SUPPORTED AND REASONABLE ...............................................................................................................17

V.    THE REQUESTED INCENTIVE AWARDS SHOULD BE AWARDED ....................18

VI.   CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .........................................................................................................14

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ...........................................................................................7

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................ 10, 12, 16

*Benoskie v. Kerry Foods, Inc.*,
No. 19-CV-684-PP, 2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ....................................13

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
897 F.3d 825 (7th Cir. 2018) ...........................................................................................7

*Chesemore v. All. Holdings, Inc.*,
No. 09-CV-413-WMC, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ..............................10

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...........................................................................................17

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .........................................................................................18

*Daluge v. Cont'l Cas. Co.*,
No. 15-CV-297-WMC, 2018 WL 6040091 (W.D. Wis. Oct. 25, 2018)......................7, 9, 18

*Doe v. Iowa Health System*,
No. 4:18-cv-453 (S.D. Iowa) .............................................................................................3

*Domann v. Summit Credit Union*,
No. 18-CV-167-WMC, 2020 WL 1847868 (W.D. Wis. Apr. 13, 2020) ..............................12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).................. 10, 12, 13

*Fulton-Green v. Accolade, Inc.*,
No. CV 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...........................................10

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ...........................................................................13

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........................14

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013)...........................................................................14

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ...........................................................................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) (in 2012, approving as high as $825
   per hour for a colead class counsel) ...................................................................10

*Jones v. Fleetwood Motor Homes*,
   127 F.Supp.2d 958 (N.D. Ill. 2000) ....................................................................11

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ...........................................................................13

*Leung v. XPO Logistics, Inc.*,
   326 F.R.D. 185 (N.D. Ill. 2018)........................................................................16

*Mathur v. Bd. of Trs. of S. Ill. Univ.*,
   317 F.3d 738 (7th Cir. 2003) ...........................................................................9

*Mezyk v. U.S. Bank Pension Plan*,
   No. 3:09-CV-384-JPG-DGW, 2012 WL 13028659 (S.D. Ill. Nov. 5, 2012).........................17

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ....................................................................................9

*Montgomery v. Aetna Plywood, Inc.*,
   231 F.3d 399 (7th Cir. 2000) ............................................................................6

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   332 F.R.D. ..............................................................................................8

*Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646 (7th Cir. 1985)...............................12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................15

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
   90 F.3d 1307 (7th Cir. 1996) ...........................................................................11

*Pickett v. Sheridan Health Care Ctr.*,
    664 F.3d. 632 (7th Cir. 2011) ...................................................................... 7, 9, 12

*Reid v. Unilever United States, Inc.*,
    No. 12 C 6058, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ................................ 11

*Reid. v. Unilever United States, Inc.*,
    No. 12-c-6058, 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) ............................ 9

*Smith v. Triad of Alabama, LLC*,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........................ 14

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .............................. 14, 15

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) .................................................................... 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .............................. 10

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................. 6, 17

# I.    Introduction

Plaintiffs seek an award of $1,575,000 for attorneys' fees and costs as well as incentive awards of $2,500 to each of the four named Plaintiffs in accordance with the proposed settlement ("Settlement" or "Settlement Agreement") between the parties in this litigation. Class Counsel[1] negotiated a valuable settlement in this risky and contested data-breach class action. The Settlement offers significant relief to the approximately 1.4 million individuals ("Settlement Class members") who were notified by Defendant Iowa Health System, doing business as UnityPoint Health ("UnityPoint") that their personally identifiable information ("PII") and protected-health information ("PHI") may have been compromised in two data breaches of UnityPoint's information systems in 2017 and 2018 ("Security Incidents"). The Settlement includes a year of comprehensive credit monitoring and identity theft protection services, as well as reimbursement for Settlement Class members who incurred costs related to the data breach (up to $1,000 for ordinary expenses and up to $6,000 for extraordinary expenses, as defined in the Settlement Agreement), and structural relief requiring UnityPoint to improve its network and data security measures to better protect Settlement Class members' information.

Class Counsel secured this relief after two years of litigation, including defending against UnityPoint's motion to dismiss, conducting robust discovery, and coordinating expert investigation. To compensate Class Counsel and the named Plaintiffs for their efforts in reaching this result, Class Counsel requests that the Court approve service awards to each named Plaintiff of $2,500 and award attorneys' fees and costs of $1,575,000, in accordance with the terms of the Settlement reached between Plaintiffs and UnityPoint.

---

[1] "Class Counsel" are Cari Campen Laufenberg, of Keller Rohrback L.L.P.; Ronald A. Marron, of the Law Offices of Ronald A. Marron, APLC; and Robert L. Teel, Of Counsel to the Law Offices of Ronald A. Marron, APLC.

The four named Plaintiffs deserve service awards for their efforts in this case. Each spent numerous hours communicating with counsel, responding to UnityPoint's discovery requests, and representing the best interests of the putative class. Although modest, the service awards recognize the significant efforts of these named Plaintiffs in this litigation, which were essential to procuring this Settlement.

Over the past two years, from inception through October 31, 2020,[2] Class Counsel devoted over 6,384.9 hours to the case, including successfully opposing UnityPoint's motion to dismiss; conducting offensive and defensive discovery in anticipation of class certification briefing; and in negotiating a favorable settlement for the class. The requested fees represent a negative multiplier of 46.16% of the fees Class Counsel actually incurred in this matter, reflected in a lodestar of $3,411,902.50.

Class Counsel undertook their efforts on a purely contingent basis and have yet to be compensated for their success in achieving comprehensive relief for the Settlement Class despite UnityPoint's persistent defenses. Ultimately, the requested fees are appropriate in light of the risks counsel faced and the results achieved for the Settlement Class. Accordingly, the Court should award $1,575,000 to Class Counsel for attorneys' fees and costs as well as $2,500 as an incentive award to each named Plaintiff as requested herein.

## II.    **Background**

Litigating this case to a successful resolution required substantial commitments of time and resources from Class Counsel. While the concurrently filed motion for final approval details the events of the case, the following summarizes the work performed by Class Counsel from

---

[2] Class Counsel will supplement these figures to include hours incurred after this date in Plaintiffs' reply in support of this motion.

initial investigation through settlement as well as the further time counsel anticipates spending throughout settlement approval and claims administration.

## A.      The Litigation

A significant amount of Class Counsel's time was spent researching, drafting, and amending a robust complaint against UnityPoint. After UnityPoint provided notice in mid-April 2018 that the PII/PHI of at least 16,429 patients and employees may have been compromised, Plaintiff Yvonne Mart Fox retained Class Counsel, who investigated the allegations and drafted and filed this class action lawsuit on May 4, 2018. ECF No. 1; Laufenberg Decl. in Supp. of Pls.' Mot. For Attorneys' Fees, Costs, And Incentive Awards ("Laufenberg Decl.") ¶ 2. The next month, on June 29, 2018, UnityPoint filed a motion to dismiss the complaint. ECF No. 8. The Parties stipulated that Plaintiff Fox could respond to the pending motion to dismiss or file an amended complaint, ECF No. 15, and Plaintiff Fox and Plaintiff Grant Nesheim filed the First Amended Class Action Complaint on July 30, 2018, ECF No. 17.

Shortly thereafter, Plaintiffs learned that a subsequent data breach may have compromised the PII/PHI of approximately 1.4 million patients and employees. Laufenberg Decl. ¶ 3. Plaintiffs sought leave to file the Second Amended Complaint. ECF No. 18. Class Counsel communicated with and vetted additional Plaintiffs, evaluated potential causes of actions, and filed the Second Amended Class Action Complaint ("Complaint"), in which Plaintiffs Danielle Duckley and Shelley Kitsis joined Plaintiffs Fox and Nesheim, on August 13, 2018. ECF No. 22; Laufenberg Decl. ¶ 3. The Complaint asserts a mix of sixteen statutory and common law claims against UnityPoint under Wisconsin, Iowa, and Illinois law. *Id.*

On September 17, 2018, UnityPoint moved to dismiss the Complaint. ECF No. 27. Class Counsel expended significant time researching and drafting the opposition brief, which was filed

on October 15, 2018. ECF No. 39; Laufenberg Decl. ¶ 4. Ultimately, the Court granted in part and denied in part UnityPoint's Motion to Dismiss on July 25, 2019. ECF No. 55.

A second lawsuit arising from the same facts, *Doe v. Iowa Health System*, No. 4:18-cv-453 (S.D. Iowa), was filed on November 26, 2018. UnityPoint moved to dismiss or transfer to this District on January 22, 2019, and on September 26, 2019 the court in *Doe* granted that motion in part and ordered that the case be transferred to this District.  Plaintiffs moved to consolidate *Doe* with the more-advanced *Fox* case. ECF No. 11. Soon thereafter, Plaintiff Doe dismissed her suit without prejudice on October 23, 2019, effectively mooting Plaintiffs' motion. ECF No. 11.

Class Counsel spent substantial time on discovery, which ultimately laid the groundwork for settlement negotiations. Laufenberg Decl. ¶ 5. Plaintiffs served on UnityPoint two sets of requests for production comprising 57 document requests; two sets of interrogatories comprising 35 interrogatories; and 41 requests for admission. Laufenberg Decl. ¶ 5. Plaintiffs also served six deposition notices on UnityPoint and one subpoena on a third party. *Id*. UnityPoint served requests for production comprising 30 document requests as well as 19 interrogatories on each of the four Plaintiffs. *Id.* Class counsel spent considerable effort working with Plaintiffs to respond and gather documents responsive to written discovery. *Id*.

After extensive meet and confer efforts between Class Counsel and counsel for UnityPoint, UnityPoint produced more than 600,000 pages of documents. Laufenberg Decl. ¶ 7. Class Counsel reviewed these documents, continued to investigate and develop the legal and factual groundwork for the case, and worked with three independent experts to understand the full scope of UnityPoint's alleged data security failures, the damages suffered by the class, and appropriate remedial measures. *Id*. Class Counsel's extensive analysis of liability and damages

issues helped set the stage for class certification briefing, which was in progress as the Parties entered settlement negotiations. *Id.* ¶ 13.

**B.    Settlement and Administration**

In December 2019, after the Court issued its Order on UnityPoint's motion to dismiss, and after document production by UnityPoint was substantially complete, the Parties began to explore the possibility of settlement. Decl. of Cari Campen Laufenberg in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Laufenberg MPA Declaration") ¶ 11. On March 3, 2020, the Parties participated in a full-day mediation with the Honorable Judge Morton Denlow (Ret.) of JAMS in Chicago, Illinois. *Id.* Judge Denlow conducted pre-mediation calls with each party and Class Counsel drafted and exchanged a substantive mediation statement in support of Plaintiffs' case. *Id.* Despite an extended mediation session, the Parties were unable to reach a resolution of the litigation. *Id.* ¶ 12.

However, the Parties participated in additional telephonic mediation sessions with Judge Denlow later that month and, under Judge Denlow's auspices, the Parties ultimately reached agreement as to all major settlement deal points. *Id.* ¶ 13. After the essential terms of the Settlement had been determined, the Parties engaged in further challenging negotiations, which extended into an additional telephonic mediation session on March 20, 2020. *Id.* The Parties ultimately reached impasse as to a disputed issue, so Judge Denlow made a mediator's proposal, which both Parties accepted. *Id.* The Parties then continued to negotiate disputed terms until April 10, 2020, when the Parties finalized and executed a written Term Sheet, which reflects the essential terms of the Settlement now offered for the Court's consideration. *Id.* ¶ 14.

As described in Plaintiffs' Motion for Final Approval of Class Action Settlement, the Settlement provides substantial monetary and injunctive relief to Settlement Class members, including (i) a one-year subscription to comprehensive credit monitoring and identity theft

protection services through Identity Guard's Total Plan, which may be deferred by one year; (ii) reimbursement of Ordinary Expenses of up to $1,000 per Settlement Class member, including the costs of credit monitoring and identity theft protection services incurred up to one year after the Claims Deadline; (iii) reimbursement of Extraordinary Expenses of up to $6,000 per Settlement Class member; and (iv) structural relief in the form of multiple, detailed commitments by UnityPoint to improve its network and data security measures. Notably, the monetary relief and credit monitoring services available to Settlement Class members are not subject to a global cap on Settlement benefits—meaning that every Settlement Class member who files a claim will be fully compensated for valid Claims, independent of the aggregate amount of Claims submitted. This is a significant benefit as compared to other settlements, in which individual class member recovery is subject to pro rata reduction if the aggregate amount of claims exceeds a global cap or other limit.

Since this Court granted preliminary approval of the Settlement, Class Counsel has worked with the Court-appointed Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to ensure that the notice and claims processes proceed smoothly. Class Counsel worked with Epiq to draft and edit the postcard notice, long form notice, claim form, website content and frequently asked questions, and IVR script for the toll-free number. Laufenberg Decl. ¶ 19. Class Counsel has also responded to approximately 96 inquiries by telephone and email from Settlement Class members. *Id.* Class Counsel will continue to expend time and effort to ensure that Settlement Class members are able to file claims and receive benefits from the Settlement, although the fees requested in this motion do not include the significant time that is likely to be expended on these future efforts. *Id.* ¶ 21.

### III.   The Requested Attorneys' Fees Should Be Awarded

Rule 23 establishes that a court may award "reasonable attorney's fees . . . that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Here, as part of the Settlement, UnityPoint has agreed to pay up to $1,575,000 in attorneys' fees and costs as awarded by the Court, which is separate negotiated amount from the consideration negotiated for the benefit of the Class. *See* Settlement Agreement ¶¶ 53–54. The requested fees and costs are reasonable both in light of the Parties' agreement as to the amount of these fees and costs— which was reached as a result of arms-length, informed, and heavily-contested negotiations—and are also independently reasonable, as set forth herein. *See* Laufenberg Decl. ¶¶ 22–33.

In the Seventh Circuit, an appropriate attorneys' fee award is one that recreates the market for the provided legal services. *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir. 2000) ("[T]he measure of what is reasonable is what an attorney would receive from a paying client in a similar case."). Further, "[f]actors that bear on the market price for legal fees include the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833 (7th Cir. 2018).

### A.   The Lodestar Method Demonstrates the Requested Fees Are Reasonable

In assessing the appropriateness of a fee request in a class action settlement, courts in the Seventh Circuit use a percentage method or a lodestar method. *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014). Here, the settlement is a "'claims-made' settlement," in that it "does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them." *See* 4 Newberg on Class Actions § 13:7 (5th ed.). However, rather than the typical "claims-made" settlement, where the defendant pays "up to some fixed ceiling", *id.*, here, the Settlement

Agreement has no global ceiling—although ordinary expenses and extraordinary expenses are capped at $1,000 and $6,000, respectively, UnityPoint has agreed to pay the full amount for which each claimant is eligible. Accordingly, because this Settlement Agreement is a "claims made" settlement, where the number of claimants does not diminish an individual claimant's recovery, the lodestar method is the appropriate approach. *See Daluge v. Cont'l Cas. Co.*, No. 15-CV-297-WMC, 2018 WL 6040091, at *4 (W.D. Wis. Oct. 25, 2018). ("Here, given that there is no common fund, the court opts to review plaintiffs' request under the lodestar method."); *see also* 5 Newberg on Class Actions §§ 15:56 & 15.70 (5th ed.) (describing claims-made settlements in the context of fees).

The lodestar is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Id.* "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett* , at 639. Here, Class Counsel's fee and cost request—$1,575,000—is substantially less than the lodestar of $3,411,902.50, which represents the actual value of the time spent on this litigation. Moreover, the requested $1,575,000 is all the more reasonable insofar as it also includes reimbursement of the expenses that Class Counsel advanced for the benefit of the Settlement Class.

The lodestar represents 6,384.9 hours reasonably spent on this litigation from inception through October 31, 2020. As detailed and summarized in the supporting declarations, Class Counsel spent many hours developing and managing the case, litigating the motion to dismiss, negotiating and conducting offensive and defensive discovery, preparing for the motion for class certification, engaging expert witnesses and consultants, and negotiating the Settlement. Laufenberg Decl. ¶¶ 2–21; Marron Decl. ¶ 3–4; Teel Decl. ¶ 3–5. These tasks are typical of this sort of litigation and were necessary to the successful prosecution and resolution of the claims. Laufenberg Decl. ¶ 23;  Decl. of Ronald A. Marron in Supp. of Pls.' Mot. for Attorneys' Fees,

Costs, and Incentive Awards and Pls.' Mot. for Final Approval of Class Action Settlement

("Marron Decl.") ¶ 9; Decl. of Robert L. Teel in Supp. of Pls.' Mot. for Attorneys' Fees, Costs,

and Incentive Awards ("Teel Decl.") ¶ 6. In support of this Motion, Class Counsel has submitted,

for *in camera* review, Class Counsel's detailed time records, comprised of contemporaneous

logs, with separate entries for the hours spent on specific tasks, indicating who performed the

work and giving a description of the task. Laufenberg Decl. ¶ 24; Marron Decl. ¶ 12; Teel Decl.

¶ 7.The total hours figure does not include time spent on this motion nor on further claims

administration, time for which Class Counsel has not and will not seek reimbursement. *Cf. In re*

*Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. at 224

(allowing attorneys to later apply for additional attorneys' fees for future work); Laufenberg

Decl. ¶ 25; Marron Decl. ¶ 6; Teel Decl. ¶ 10.

The lodestar reflects Class Counsel's reasonable hourly rates. A reasonable hourly rate is

"one that is 'derived from the market rates for the services rendered,'" and the Seventh Circuit

"presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the

market rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). If, as

here, "an attorney uses contingent fee arrangements, the 'next best evidence' of the attorney's

market rate is 'evidence of rates similar experienced attorneys in the community charge paying

clients for similar work and evidence of fee awards the attorney has received in similar cases.'"

*Reid. v. Unilever United States, Inc.*, No. 12-c-6058, 2015 U.S. Dist. LEXIS 75383, at *43 (N.D.

Ill. June 10, 2015). Here, the relevant community is that of attorneys practicing multi-state class

action litigation: "if an out-of-town attorney has a higher hourly rate than local practitioners,

district courts should defer to the out-of-town attorney's rate when calculating the lodestar

amount." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743–44 (7th Cir. 2003). Class

Counsel base their rates upon the experience and skill of the attorney or paralegal performing the

work. Laufenberg Decl. ¶ 26; Marron Decl. ¶ 18; Teel Decl. ¶ 11. Class Counsel's rates are comparable to rates charged by other law firms involved in similar complex litigation. Laufenberg Decl. ¶ 26; Marron Decl. ¶ 20; Teel Decl. ¶ 13. The chart below reflects the reasonable hourly rates for Class Counsel's work on this matter by position. *See* Laufenberg Decl. ¶ 27; Marron Decl. ¶ 19; Teel Decl. ¶ 20. The 2020 billing rate is proper because, as the Supreme Court has recognized, such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). Within the ranges, hourly rates increase with the experience of the attorney or paralegal.

| Position | Range of Hourly Rates | Total Hours |
|----------|----------------------|-------------|
| Partner | $700–865 | 1,559.4 |
| Attorney | $415–625 | 3,628.7 |
| Paralegal | $225–350 | 1,196.8 |

These rates generally align with those approved in other cases in this district, where Courts have approved hourly rates "ranging from $795.00 for a partner to $225.00 for a paralegal," *Daluge*, 2018 WL 6040091, at *4, and from "$395 (for lower-level associates) to $895 (for highest-level partners)" *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014). Class Counsel's hourly rates are on par with market rates usually charged by other plaintiffs' firms handling multistate data-breach class actions. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (finding reasonable hourly rates of partners from $400 to $970, non-partner attorneys from $185 to $850, and non-attorneys from $95 to $440); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (finding reasonable rates from $450 to $900 for partners, $160-$850 for non-

partner attorneys, and $50 to $380 for paralegals); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) (finding reasonable hourly rates range $202 to $975 per hour); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (finding reasonable hourly rates charged by partners who billed $1050, $1000 $750, and $935 per hour); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (in 2012, approving as high as $825 per hour for a colead class counsel)' Laufenberg Decl. ¶ 28; Marron Decl. ¶ 20; Teel Decl. ¶ 13. Moreover, these rates are particularly reasonable in light of Class Counsel's significant experience and the relatively specialized nature of this data breach class actions. Laufenberg Decl. ¶¶ 29–30; Marron Decl. ¶ 20; Teel Decl. ¶¶ 8, 14. Finally, these rates are the same as or are comparable to rates that have been approved by other federal and state courts. Laufenberg Decl. ¶ 26; Marron Decl. ¶¶ 20, 22.

As reflected in the modest lodestar, Class Counsel took measures to litigate this case efficiently. Laufenberg Decl. ¶ 31; Marron Decl. ¶ 14; Teel Decl. ¶ 15. Where possible, partners assigned tasks to associates or paralegals who bill at lower hourly rates, or to other employees whose time Class Counsel does not seek to recover. Laufenberg Decl. ¶ 31; Marron Decl. ¶ 14; Teel Decl. ¶ 15–16; *cf. People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996) (holding paralegal work recoverable where "the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder."); *Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 WL 3653318, at *11 (N.D. Ill. June 10, 2015) ("[A]ttorneys can only apply their rates to work that reasonably requires counsel of that experience.") (internal quotation omitted). Class Counsel communicated proactively among firms to ensure that no duplicate work would occur. Laufenberg Decl. ¶ 31; Marron ¶ 15; *Reid*, 2015 WL 3653318, at *13 ("[T]he Court considers it

reasonable for multiple attorneys to be involved in tasks related to a class action, where, as here, multiple law firms and attorneys may be working and coordinating with one another to accomplish a favorable result for the class. "). Furthermore, before submitting this motion, Class Counsel reviewed the time reports to ensure that the lodestar did not include hours that were "excessive, redundant, or otherwise unnecessary." Laufenberg Decl. ¶ 32; Marron Decl. ¶ 11; Teel Decl. ¶ 9. Finally, Class Counsel have not sought time "for work on unsuccessful motions that did not otherwise advance the case and that was work that would not have been necessary if the party had pursued successful avenues." *Jones v. Fleetwood Motor Homes*, 127 F.Supp.2d 958, 973 (N.D. Ill. 2000); Laufenberg Decl. ¶ 32; Marron Decl. ¶ 14; Teel Decl. ¶ 9.

Although the lodestar itself is reasonable, Class Counsel requests even less in fees and costs: Class Counsel's request amounts to a "negative" multiplier. Given the "strong presumption that the lodestar calculation yields a reasonable attorneys' fee award," *Pickett*, 664 F.3d at 639, a fee request lower than the lodestar is especially reasonable. *See Domann v. Summit Credit Union*, No. 18-CV-167-WMC, 2020 WL 1847868, at *2 (W.D. Wis. Apr. 13, 2020) ("The fact that the lodestar method produces a 'negative multiplier' is also a factor supporting the reasonableness of the fee request, given that courts have approved multipliers of five or more."). That is especially true because the contingent nature of the action here would warrant a positive multiplier. *Ohio-Sealy Mattress Mfg. Co. v.* Sealy Inc., 776 F.2d 646, 660 (7th Cir. 1985) ("[D]istrict courts may add a bonus to the lodestar to compensate for the contingent nature of success."); *see, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (granting fee award that amounted to an effective 2.62 lodestar multiplier); *In re Experian Data Breach Litig.*, SACV 15-01592 AG (DMFx) (ECF No. 322) (C.D. Cal. May 10, 2019) (approving fee award with 1.65 lodestar multiplier); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068,

at *28 (N.D. Cal. Aug. 17, 2018) (granting fee award that amounted to an effective multiplier of "slightly over 1.0"). As explained below, "there was, at the outset, the possibility of no recovery," and substantial risks. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991). A multiplier would "compensat[e] for the risks assumed in developing the case and for the time-value of money." *Ohio-Sealy*, 776 F.2d at 660. That a multiplier would be warranted in this case underscores the appropriateness of the requested fees in this case.

## B.     The Seventh Circuit Factors Support the Requested Fees

The four factors that courts in the Seventh Circuit rely on to evaluate attorneys' fees awards further demonstrate that this request is appropriate.

### 1.     Risk of Nonpayment

Because Class Counsel litigated this case on a contingent basis, and given the uncertainties of data-breach class actions, the risk of nonpayment was significant. This factor weighs in favor of the requested fee.

As explained above, the hours spent on this litigation alone justify the fee request. But the fee request is especially reasonable in light of the fact that, like most "suits for damages in this country . . . on the plaintiff's side," this case was "handled on . . . contingent fee basis." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *see also Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020). Class Counsel received no compensation for their efforts during the course of this litigation, which has gone on for over two years. Laufenberg Decl. ¶ 33; Marron Decl. ¶ 17; Teel Decl. ¶ 17. Additionally, Class Counsel advanced $$141,056.25 in out-of-pocket expenses, knowing that if their efforts were unsuccessful, they would not receive payment or other reimbursement for either their work or expenses. Laufenberg Decl. ¶ 34; Marron Decl. ¶ 23; Teel Decl. ¶ 19.

Courts recognize that "[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'" *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986). A "contingency fee arrangement is appropriate" in a case where, as here, "class members have little motivation to retain counsel on an hourly basis because they are not guaranteed to prevail on their claims and the individual damages suffered were nominal." *McKinnie,* 678 F. at 815. The fee arrangement "insulates the plaintiffs from any economic risk if their litigation is ultimately unsuccessful." *Id.*

Courts also recognize the risks inherent in data breach litigation. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32 ("[T]he law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve."). Although all class actions involve a high level of risk, expense, and complexity, data breach litigation is especially risky and complex. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). Although Plaintiffs prevailed in part on UnityPoint's motion to dismiss, UnityPoint continued to dispute the legal and factual basis for the lawsuit.

Another of these risks was that UnityPoint could successfully oppose class certification. To date, relatively few Courts have decided whether to grant class certification in data breach cases, and these Courts have reached different decisions as to this issue. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), and *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL

-14-

1044692, at *16 (M.D. Ala. Mar. 17, 2017) (granting certification); *see also In re Anthem*, *Inc.* *Data Breach Litg.,* 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data-breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky."). Although the Settlement Class must still be certified, that analysis does not examine contested questions such as manageability. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Furthermore, case law specific to data breach litigation is currently evolving, with differing results, and there is no guarantee of the ultimate result. *See In re Anthem*, 327 F.R.D. at 318 ("Due to the unsettled nature of the legal questions, [p]laintiffs would likely have to contend with changing interpretations of procedural and substantive provisions throughout the course of the case."); *Gordon*, 2019 WL 6972701, at *1 ("Serious questions of law and fact regarding the merits of [p]laintiffs' claims and [d]efendant's defenses place the ultimate outcome of the litigation in doubt."); *In re Sonic Corp.*, 2019 WL 3773737, at *7 ("This unsettled area of law often presents novel questions for courts."). Damages theories present another difficulty in these class actions. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (acknowledging risk of small recovery where estimates of damages varied). Further, even if the case survived class certification, summary judgment, trial, and any appeal add to the substantial risk of nonpayment in this case. The Court should factor in these substantial risks when considering the appropriateness of the requested fee.

## 2. Quality of the Attorneys' Performance

The quality of Class Counsel's performance also weighs in favor of the fee. As set forth above, Class Counsel investigated and filed the original complaint; filed an amended complaint in response to the further data breach; successfully opposed UnityPoint's motion to dismiss the entire case; conducted extensive discovery, investigation, and expert consultation necessary to

develop the case against UnityPoint; and negotiated a robust Settlement that provides significant relief for Settlement Class members—all against the back drop of a diametrical disagreement with UnityPoint on the merits of the case. *See* Laufenberg Decl. ¶¶ 2–21.

This significant work was performed by experienced attorneys. Class Counsel are recognized as experts in consumer law and class-action litigation and have been appointed class counsel in major consumer class action cases. *See* Laufenberg MPA Decl. ¶ 24; Decl. of Ronald A. Marron in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Marron MPA Declaration") ¶¶ 7-33; Decl. of Robert L. Teel in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Teel MPA Decl.") ¶¶ 8-20. They committed their full resources to representing the Settlement Class and will continue that commitment in resolving this case and administering the Settlement. *See* Laufenberg MPA Decl. ¶ 28; Marron MPA Decl. ¶ 6; Teel MPA Decl. ¶¶ 3-4, 20. Successfully resolving this case required an understanding of the complex, technical subject matter of data security, industry best practices, and the mechanisms of a data breach, particularly in the healthcare context. Laufenberg Decl. ¶ 30; Marron Decl. ¶ 21; Teel Decl. ¶ 14. Obtaining this understanding was necessary to drafting targeted discovery requests, consulting with experts, and negotiating for meaningful injunctive relief in the Settlement process. Laufenberg Decl. ¶ 30; Marron Decl. ¶ 21; Teel Decl. ¶ 14. Similarly, an understanding of large class actions was essential to developing damages theories appropriate to this litigation. "Litigating complicated matters, especially unprecedented issues, is a circumstance that points in favor of a larger [fee award]." *In re Anthem*, 2018 WL 3960068, at *13.

### 3.  Amount of Work Necessary to Resolve the Litigation

The amount of work necessary to resolve the litigation also weighs in favor of the requested fees. As the lodestar analysis reveals, Class Counsel spent 6,384.9 hours resolving the

litigation from the original complaint through October 31, 2020. This work included significant factual investigation, opposing UnityPoint's motion to dismiss, and extensive and technical discovery. Class Counsel likewise represented Plaintiffs and the putative Class through protracted negotiations with UnityPoint to reach this favorable outcome and will continue to spend significant time managing the Settlement claims and administration process. Plaintiffs have submitted documentation, cited above, of the reasonable hours committed here. The requested fee is reasonable in light of the amount of work performed by Class Counsel.

4.      The Stakes of the Case

The stakes of this case also support the requested fee. Plaintiffs represented over a million Settlement Class members whose PII/PHI was implicated in a breach of UnityPoint's systems, and continues to be stored in UnityPoint's systems. *See Leung v. XPO Logistics*, *Inc.*, 326 F.R.D. 185, 202 (N.D. Ill. 2018) (agreeing that "the stakes . . . were high because hundreds of thousands of class members were involved.").

Throughout this lawsuit, Plaintiffs intended to recover damages for UnityPoint's breach and negligence, and to ensure that the highly personal data of Settlement Class members was protected in the future. *See generally* ECF No. 22. Given the above uncertainties in data breach class action litigation, the result was far from certain. *Cf. Craftwood Lumber Co. v. Interline Brands*, Inc., No. 11-CV-4462, 2015 WL 1399367, at *4 (N.D. Ill. Mar. 23, 2015) (finding the stakes of the case weigh in favor of a 30% fee, even where the "legal issues were not particularly unique"). As such, the stakes of this case align with the modest fee request.

IV.     **The Requested Expenses Are Supported and Reasonable**

In addition to fees, the Federal Rules of Civil Procedure allow the court to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The requested fee will reimburse Class Counsel not only for the time spent on this litigation but also for the costs and expenses reasonably incurred: the requested $1,575,000 includes reimbursement of the expenses that Class Counsel advanced for the benefit of the class. Class Counsel incurred $141,056.25 in reasonable expenses, as detailed in the Laufenberg, Marron and Teel Declarations. Laufenberg Decl. ¶ 34; Marron Decl. ¶ 23; Teel Decl. ¶ 19. These costs are attributable to ordinary and necessary costs such as filing fees, expert fees, document organization, travel, and engaging a mediator. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Class Counsel has reviewed these costs to ensure that they are not excessive or unnecessary. Laufenberg Decl. ¶ 36; Marron Decl. ¶ 25; Teel Decl. ¶ 21. As one court in this circuit has observed, "Class Counsel, proceeding on a contingent-fee basis with a high risk of no recovery, had a strong incentive to keep expenses at a reasonable level." *Mezyk v. U.S. Bank Pension Plan*, No. 3:09-CV-384-JPG-DGW, 2012 WL 13028659, at *3 (S.D. Ill. Nov. 5, 2012). The same is true here. Moreover, the lodestar alone eclipses Class Counsel's fee request: the amount of expenses already advanced by Class Counsel in this case further demonstrates the appropriateness of the requested fee.

## V.      The Requested Incentive Awards Should Be Awarded

The Seventh Circuit recognizes that "a named plaintiff is an essential ingredient of any class action." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Therefore, "an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id*. To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id*. "District courts in this circuit have awarded incentive fee awards ranging from

-18-

$5,000 to $25,000." *Daluge*, 2018 WL 6040091, at * (collecting cases); *see also Jewell*, 2020 WL 4904427, at *3 (approving incentive award of $5,000).

The Court should approve the award of $2,500 to each named Plaintiff in accordance with the Parties' agreements. Plaintiffs have fulfilled their duties in pursuing their claims and those of Settlement Class members in this matter, and they have vigorously represented the interests of the Settlement Class. *See* ECF No. 84, Decl. of Yvonne Mart Fox in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Fox MPA Decl."); Decl. of Grant Nesheim in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Nesheim MPA Decl."); Decl. of Danielle Duckley in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Duckley MPA Decl."); Decl. of Shelley Kitsis in Supp. of Pls.' Mot. for Prelim. Approval of Class Action Settlement ("Kitsis MPA Decl."). Plaintiffs pursued this case on behalf of all Settlement Class members and performed their duty to protect their interests. Fox MPA Decl. ¶¶ 10-11; Nesheim MPA Decl. ¶¶ 10-11; Duckley MPA Decl. ¶¶ 10-11; Kitsis MPA Decl. ¶¶ 10-11. Further, they have actively participated in the litigation by frequently conferring with Class Counsel, reviewing the Complaint, and responding to discovery. Fox MPA Decl. ¶¶ 3-6; Nesheim MPA Decl. ¶¶ 3-6; Duckley MPA Decl. ¶¶ 3-6; Kitsis MPA Decl. ¶¶ 3-6. Their work and participation were essential to achieve the Settlement. Laufenberg Decl. ¶ 37. Given this work, the $2,500 request for each Plaintiff, totaling $10,000 is appropriate.

## VI.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order granting Plaintiffs' attorneys' fees and costs of $1,575,000 and awarding $2,500 to each of the named Plaintiffs.

Dated: December 2, 2020

Respectfully submitted,

_s/ Cari Campen Laufenberg_

Cari Campen Laufenberg (*pro hac vice*)
Adele A. Daniel (*pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
claufenberg@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (*pro hac vice*)
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

_s/ Ronald A. Marron_

Ronald A. Marron
Kas L. Gallucci
Michael T. Houchin
Lilach Halperin
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92103
Tel.: (619) 696-9006
Fax: (619) 564.6665
*ron@consumersadvocates.com*
*kas@consumersadvocates.com*
*mike@consumersadvocates.com*
*lilach@consumersadvocates.com*

_s/ Robert L. Teel_

Robert L. Teel
*Of Counsel* to the
**LAW OFFICES OF RONALD A. MARRON**
1425 Broadway, Mail Code: 20-6690
Seattle, WA 98122
Tel.: (866) 833-5529
Fax: (855) 609-6911
*lawoffice@rlteel.com*

**_Attorneys for Plaintiffs and the Putative Settlement Class_**

-20-

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on December 2, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Wisconsin using the CM/ECF system, which shall send electronic notification to all counsel of record.

s/ *Sarah Skaggs*
Sarah Skaggs