IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

YVONNE MART FOX, GRANT NESHEIM,
DANIELLE DUCKLEY, and SHELLEY KITSIS,
individually and on behalf of all others similarly
situated,

                  Plaintiffs,

  v.

IOWA HEALTH SYSTEM
d.b.a. UNITYPOINT HEALTH,

                  Defendant.

OPINION and ORDER

18-cv-327-jdp

---

This proposed class action involves two data breaches in which, plaintiffs allege, defendant Iowa Health System, d.b.a. UnityPoint Health, failed to protect plaintiffs' personal data and the personal data of about 1.4 million others. The court held a hearing on plaintiffs' motion for final approval of a proposed settlement of this action. The court is prepared to approve the settlement, but an untimely opt-out request requires a decision from the court.

Kayla McCall says that she didn't receive notice of the proposed settlement until after the January 4, 2021 opt-out deadline, "when the [notice] was forwarded from [her] old address after some delay." Dkt. 109-2, at 2. The parties have briefed the issue as requested by the court.

A district court has discretion under Federal Rule of Civil Procedure 6(b) to allow a class member to opt out of a proposed settlement after the deadline to do so. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003). The question is whether "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Factors that are relevant to this question include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including

whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

The court will allow McCall to opt out of the settlement. UnityPoint may face some prejudice, because there are now 68 rather than 67 class members who will not be bound by the settlement. A single additional opt-out from a class of 1.4 million members does not impose undue prejudice on UnityPoint. Regarding the length of the delay, McCall's response was postmarked 19 days after the opt-out deadline, a significant delay, but not patently unreasonable. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *11 (N.D. Ill. May 14, 2019) (allowing class member to opt out of proposed settlement even though opt-out request was submitted three weeks late "without any explanation").

McCall's stated reason for the delay is that she did not receive the notice until after the opt-out deadline because she had moved, which UnityPoint attempts to dispute. The claims administrator confirms that notice of the settlement was mailed beginning October 27, 2020, and the administrator received a new address for McCall by postal forward on December 15, 2020. The notice was remailed to McCall on an unspecified date, but presumably shortly after December 15, which was about three weeks before the January 4, 2021 opt-out deadline. UnityPoint says that the notice should have gotten to McCall before January 4, based on the idea that the mail doesn't usually take that long. But mail service is typically overburdened around the holidays, and extraordinary delays continue to be reported for this past holiday season. *See, e.g.,* Quinn Klinefelter, *'There's No End In Sight': Mail Delivery Delays Continue Across The Country*.[1] The court is satisfied that McCall was not neglectful. She just didn't get the notice in time, through no fault of her own, and she acted promptly once she did.

---

[1] National Public Radio (Jan. 22, 2021), https://www.npr.org/2021/01/22/959273022/theres-

UnityPoint also contends that even if McCall's delay was justified, McCall herself must request an extension under Rule 6(b). UnityPoint cites *In re VMS Securities Litigation*, 145 F.R.D. 458, 462 (N.D. Ill. 1992), *vacated in part on other grounds by* 21 F.3d 139 (7th Cir. 1994), in which the court noted that a class member requesting a late opt-out (after final approval of the settlement) hadn't "filed a formal motion" requesting an extension under Rule 6(b) or relief from final judgment under Rule 60(b). But the court went on to consider the opt-out request on its merits despite the lack of a formal motion. *Id.* at 462–63. This was consistent with the court's treatment of other late opt-out requests in the same litigation, which the court considered to have "effectively [sought] an enlargement of time" under Rule 6(b) or relief from final judgment under Rule 60(b), even though the class members hadn't filed formal motions. *In re VMS Sec. Litig.*, No. 89 C 9448, at *2 (N.D. Ill. Aug. 13, 1992). The court ultimately allowed two of the late opt-outs to be excluded from the settlement. *Id.* at *5. So these cases don't support UnityPoint's argument.

Requiring McCall to bring the motion herself would be needlessly formalistic and wasteful. It would require McCall either to (1) appear in this action; or (2) bring a new lawsuit against UnityPoint, wait for UnityPoint to move to dismiss her claims as barred by the judgment in this case, and then move for an extension. If excusable neglect were a closer question here, it might make sense to require McCall to make her own motion. But the question isn't close, so the court sees no reason to force McCall to take these steps. *See also Snyder*, 2019 WL 2130079, at *10 (allowing late opt-outs without requiring motions from class members themselves under court's "considerable discretion to allow late . . . opt-outs to go forward").

---

no-end-in-sight-mail-delivery-delays-continue-across-the-country

For these reasons, the court will allow McCall to opt out of the proposed settlement.

Entered February 26, 2021.

        BY THE COURT:

        /s/

        _____
        JAMES D. PETERSON
        District Judge